2008 UT 58

**STATE of Utah, Plaintiff and Appellee,**

v.

**Erik Kurtis LOW, Defendant and Appellant.**

**No. 20050807.**

Supreme Court of Utah.

Aug. 22, 2008.

Mark L. Shurtleff, Att'y Gen., Christopher D. Ballard, Asst. Att'y Gen., Salt Lake City, for plaintiff.

Elizabeth Hunt, Salt Lake City, for defendant.

## AMENDED OPINION

On Certification from the Utah
Court of Appeals

PARRISH, Justice:

¶ 1 Erik Kurtis Low was charged with the murder of Michael Hirschey and ultimately convicted of manslaughter by a jury. Low argues on appeal that the district court erred by instructing the jury on extreme emotional distress manslaughter and imperfect self-defense manslaughter over his objection. We hold that the jury was properly instructed as to imperfect self-defense manslaughter, but we find merit in Low's argument with respect to the inclusion of the instruction for extreme emotional distress manslaughter. We accordingly reverse Low's manslaughter

conviction and remand for further proceedings consistent with this opinion.

## FACTUAL BACKGROUND

¶ 2 Low met Hirschey, Kevin McCall, and Darick Touchette at a bar in Park City, Utah, on May 7, 2003. The group later went to Hirschey's apartment and began ingesting cocaine. As Low was preparing his portion of the cocaine for smoking, Hirschey objected to Low's choice to smoke, rather than snort. Touchette then knocked the cocaine out of Low's hand and ground it into the carpet. While Low was on the ground looking for the cocaine, Touchette and Hirschey ridiculed him and called him a "loser."

¶ 3 Later that night, Hirschey showed the others his gun collection, which included a .357 magnum handgun. During the course of the evening, Low was the continued recipient of more teasing, manhandling, and threats. While Low was urinating, Hirschey grabbed him by the neck from behind, hit him on the back of the head, and told him that if he ratted on Hirschey or his friends, Hirschey would "waste him." Later, Hirschey, who had been a successful competitive wrestler, flipped Low onto the floor and wrestled with him on the ground, causing Low's neck to become sore. McCall and Hirschey then pushed Low's legs up over his shoulders while stepping on his groin in an apparent attempt to "alleviate" the neck pain. Following this incident, Low went to the back of the apartment for approximately twenty minutes, then returned to the living room and passed out on the floor. While Low was passed out, Hirschey poured five large tumblers of water on him, picked him up and slammed him into a chair, and tried to force him to drink a large bottle of hot water. When Low got up to walk to the back of the apartment, Hirschey followed him and gave him a "wedgie" by grabbing the back of Low's underwear and lifting it up with both hands.

¶ 4 Ten or fifteen seconds after Low and Hirschey left the living room, McCall heard someone say "Oh" and then heard a pop. Low then walked back into the living room. McCall could see Hirschey's feet sticking out into the hallway and asked Low what happened, to which Low responded, "He is dead." McCall got out his cell phone to call 911, but Low took McCall's hand and pushed the cell phone back into his pocket. Low then asked McCall for his car keys, which McCall dropped on the floor before running outside. Once outside the apartment, McCall hid under a car and called 911.

¶ 5 When police officers arrived at the apartment complex, Officer Ron King parked his cruiser facing a football field adjacent to the apartment complex because dispatch had reported that a person was seen walking toward the field. Officer King's headlights were shining toward a group of three trees next to a fence dividing the apartment complex from the football field. At that point, Low emerged and approached Officer King. Officer King ordered Low to stop, at which point Low said, "I'm the one you're looking for" and "I have something for you." Officer King asked what the "something" was, and Low responded that it was a ".357 mag." Officer King searched Low and found a .357 magnum handgun tucked in the front of Low's waistband.

¶ 6 Officer King handcuffed Low and turned on his pocket recorder. Low asked Officer King to read him his rights. Officer King responded by stating, "When I start asking you questions, at the proper time, I'll read you your rights, okay?" After Officer King placed Low in the back seat of the police cruiser, he and Low engaged in conversation during which Low made some potentially incriminating statements.

¶ 7 Officer King subsequently transported Low to the police station. While left handcuffed and alone in an interview room with a closed circuit television, Low took a .357 magnum bullet out of his pocket and kicked it under the table. While Low was being booked into jail, he asked an officer, "What do you get for killing somebody?" When the officer responded that he did not understand the question, Low repeated, "How long do you stay in jail for killing somebody?" Later, when another inmate asked Low what he was in jail for, Low said that he killed someone.

## PROCEDURAL BACKGROUND

¶ 8 The State charged Low with murder, theft, and carrying a concealed dangerous weapon without a valid permit. At trial, Low admitted that he shot Hirschey but claimed that he acted in self-defense. Low testified that when he left the living room, Hirschey grabbed him and threw him into a spare bedroom. When Low tried to get up, he saw Hirschey in the doorway with a gun pointed at him. Low tried to run past Hirschey, but Hirschey pushed him back into the room. Low then struggled with Hirschey in an attempt to gain control of the gun. At one point, the gun was pointed at Low's head and Hirschey was attempting to pull the trigger, but Low blocked the hammer to keep the gun from firing. Low ultimately got control of the gun and backed up. Hirschey took a step back and then charged Low. Low screamed "Don't!" and shot Hirschey twice in rapid succession.

¶ 9 During trial, the district court dismissed the theft claim based on the court's determination that the State had failed to produce evidence to support the charge. Additionally, the court denied the State's motion to instruct the jury on manslaughter. The jury found Low guilty of carrying a concealed weapon but was unable to reach a verdict on the murder charge. The court sentenced Low to one year in jail for the weapons charge, ordered a mistrial on the murder charge, and set a date for a new trial on the murder charge.

¶ 10 At the second trial, the State again asked for a manslaughter instruction. Over Low's objection, the district court granted the State's request and included instructions on both extreme emotional distress manslaughter and imperfect self-defense manslaughter. The jury found Low not guilty of first degree murder but convicted him of manslaughter. Low was sentenced to one to fifteen years in prison for manslaughter, with a one-year enhancement for illegal use of a handgun in committing a felony.

¶ 11 Following sentencing, Low filed a timely notice of appeal with the court of appeals. The court of appeals subsequently certified the case for transfer to this court pursuant to rule 43 of the Utah Rules of Appellate Procedure. We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(b) (2008).

## ANALYSIS

¶ 12 Low presents several assignments of error. Specifically, he argues that (1) the district court improperly included jury instructions for extreme emotional distress manslaughter and imperfect self-defense manslaughter over his objection, (2) the district court included an erroneous flight instruction, (3) the district court improperly admitted his custodial statements, and (4) the district court improperly admitted his testimony from the first trial. Additionally, Low argues that if we reverse his conviction, his constitutional right to be free from double jeopardy bars the State from retrying him.

### I. IMPERFECT SELF–DEFENSE AND EXTREME EMOTIONAL DISTRESS MANSLAUGHTER

¶ 13 Low's first assignment of error is that the district court improperly instructed the jury on extreme emotional distress manslaughter and imperfect self-defense manslaughter. Because extreme emotional distress manslaughter and imperfect self-defense manslaughter are both affirmative defenses under Utah law, Low argues that the choice of whether to assert them belongs to the defendant. Low contends that the district court committed reversible error by including the manslaughter instructions over his objection. We conclude that the district court did not err by including the imperfect self-defense instruction, but we agree with Low that the court did err by including the extreme emotional distress manslaughter instruction. We accordingly reverse Low's manslaughter conviction and remand for further proceedings consistent with this opinion.

### A. Procedural History

¶ 14 During Low's first trial, the State asked for an imperfect self-defense manslaughter instruction. The district court noted that Low had "done nothing to advance ... imperfect self-defense as an affirmative

defense" and, accordingly, that such an instruction was "potentially a substantial violation of [Low's] constitutional right to prepare and present a defense." The court therefore denied the State's motion to include the imperfect self-defense manslaughter instruction.[2]

¶ 15 At Low's second trial, the State again asked that the jury be instructed on manslaughter. Specifically, the State asked for both an extreme emotional distress manslaughter instruction and an imperfect self-defense manslaughter instruction. Low objected to the imperfect self-defense manslaughter instruction, arguing that the jury would confuse it with his claim of perfect self-defense and that there was no evidence to show that his actions were legally unjustifiable. Low also objected to the extreme emotional distress manslaughter instruction, arguing that there was no factual basis for it. The district court overruled Low's objections and included both instructions.

### B. Preservation

¶ 16 The State argues that Low failed to preserve the claim he urges on appeal with respect to the inclusion of the manslaughter instructions. Low argues on appeal that the manslaughter instructions were erroneously given because extreme emotional distress and imperfect self-defense are affirmative defenses to—and not lesser included offenses of—murder. The State contends that this objection is different from the objections he raised in the district court. We agree.

¶ 17 " 'Generally speaking, a timely and *specific* objection must be made [at trial] in order to preserve an issue for appeal.' " *State v. Winfield*, 2006 UT 4, ¶ 14, 128 P.3d 1171 (quoting *State v. Pinder*, 2005 UT 15, ¶ 45, 114 P.3d 551) (emphasis added) (alteration in original). "Utah courts require specific objections in order to bring all claimed errors to the trial court's attention to give the court an opportunity to correct the errors if appropriate." *State v. Brown*, 856 P.2d 358, 361 (Utah Ct.App.1993) (internal quota-

tion marks omitted). "Where there is no clear or specific objection and the specific ground for objection is not clear from the context[,] the theory cannot be raised on appeal." *State v. Johnson*, 2006 UT App 3, ¶ 13, 129 P.3d 282 (internal quotation marks omitted). Thus, if a party makes an objection at trial based on one ground, this objection does not preserve for appeal any alternative grounds for objection. *See, e.g., State v. Schreuder*, 726 P.2d 1215, 1222 (Utah 1986); *State v. Smedley*, 2003 UT App 79, ¶¶ 9–13, 67 P.3d 1005.

¶ 18 In this case, Low objected to the imperfect self-defense manslaughter instruction in the district court, claiming that the jury would confuse it with his claim of perfect self-defense and that there was no evidence to show that his actions were legally unjustifiable. Low objected to the extreme emotional distress manslaughter instruction on the ground that there was no factual basis for it. However, Low never objected to the manslaughter instructions for the reason that he now urges as grounds for reversal: that these two forms of manslaughter are affirmative defenses and that "[c]ourts have no authority to force affirmative defenses upon criminal defendants." Because Low did not raise this specific objection before the district court, he failed to preserve it for appeal.

### C. Standard of Review

¶ 19 When a party fails to preserve an issue for appeal, we will address the issue only if (1) the appellant establishes that the district court committed "plain error," (2) "exceptional circumstances" exist, or (3) in some situations, if the appellant raises a claim of ineffective assistance of counsel in failing to preserve the issue. *State v. Weaver*, 2005 UT 49, ¶ 18, 122 P.3d 566; *State v. Hansen*, 2002 UT 114, ¶ 21 n. 2, 61 P.3d 1062. Because Low failed to preserve his claim regarding the manslaughter instructions in the district court, we can review it only for plain error, exceptional circumstances, or ineffective assistance.

---

**2.** In the first trial, the State also asked for a reckless manslaughter instruction. After noting that Low had admitted to intentionally killing Hirschey, the district court held that there was

no evidence of recklessness and accordingly refused to give the reckless manslaughter instruction.

■ ¶ 20 As discussed below, we hold that it was plain error for the district court to instruct the jury on extreme emotional distress manslaughter. "To prevail under plain error review, a defendant must demonstrate that '[1] an error exists; [2] the error should have been obvious to the trial court; and [3] the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome.' " *State v. Ross,* 2007 UT 89, ¶ 17, 174 P.3d 628 (quoting *State v. Lee,* 2006 UT 5, ¶ 26, 128 P.3d 1179). We discuss each of these elements in turn.

### D. Error

■ ¶ 21 We begin our plain error analysis by considering whether the district court erred when it instructed the jury on extreme emotional distress manslaughter and imperfect self-defense manslaughter. To make this determination, we look to the Utah Criminal Code and conclude that extreme emotional distress and imperfect self-defense are affirmative defenses to murder, rather than lesser included offenses of murder. We then consider whether a court may instruct the jury regarding an affirmative defense over the objection of a criminal defendant. We then apply these rules to Low's case and determine that although the district court properly instructed the jury on imperfect self-defense manslaughter, it improperly instructed the jury on extreme emotional distress manslaughter.

1. Statutory Structure of Imperfect Self-Defense Manslaughter and Extreme Emotional Distress Manslaughter

¶ 22 Prior to 1999, extreme emotional distress manslaughter and imperfect self-defense manslaughter were listed in Utah's manslaughter statute as types of manslaughter. Utah Code Ann. § 76–5–205(1) (1995).[3] In 1999, extreme emotional distress and im-

perfect self-defense were removed from the manslaughter statute and inserted into the murder statute as affirmative defenses to murder. *Id.* § 76–5–203(3) (1999). The current version of the murder statute provides in part:

> It is an *affirmative defense* to a charge of murder or attempted murder that the defendant caused the death of another or attempted to cause the death of another:
>
> > (i) under the influence of extreme emotional distress for which there is a reasonable explanation or excuse; or
> >
> > (ii) under a reasonable belief that the circumstances provided a legal justification or excuse for his conduct although the conduct was not legally justifiable or excusable under the existing circumstances.

*Id.* § 76–5–203(4)(a) (Supp.2007) (emphasis added). Under the statute, the assertion of a successful affirmative defense of either extreme emotional distress or imperfect self-defense reduces murder to manslaughter or attempted murder to attempted manslaughter. *Id.* § 76–5–203(4)(d). The manslaughter statute now reads: "Criminal homicide constitutes manslaughter if the actor ... commits a homicide which would be murder, but the offense is reduced pursuant to Subsection 76–5–203(4)." *Id.* § 76–5–205(1)(b) (2003).

■■ ¶ 23 "Under our rules of statutory construction, we look first to the statute's plain language to determine its meaning." *State v. Gallegos,* 2007 UT 81, ¶ 12, 171 P.3d 426 (internal quotation marks omitted). "We presume that the legislature used each word advisedly and give effect to each term according to its ordinary and accepted meaning." *State v. Holm,* 2006 UT 31, ¶ 16, 137 P.3d 726.

---

**3.** The pre–1999 manslaughter statute provided in part:

(1) Criminal homicide constitutes manslaughter if the actor:

  (a) recklessly causes the death of another; or

  (b) causes the death of another under the influence of extreme emotional disturbance for which there is a reasonable explanation or excuse; or

  (c) causes the death of another under circumstances where the actor reasonably believes the circumstances provide a legal justification or excuse for his conduct although the conduct is not legally justifiable or excusable under the existing circumstances.

Utah Code Ann. § 76–5–205(1) (1995).

¶ 24 Under the plain language of Utah's murder and manslaughter statutes, extreme emotional distress manslaughter and imperfect self-defense manslaughter are affirmative defenses to murder. They are no longer lesser included offenses of murder. For this reason, we do not discuss whether the State was entitled to jury instructions for extreme emotional distress manslaughter and imperfect self-defense manslaughter based upon our prior case law regarding lesser included offenses. Rather, we are bound by the legislature's decision to categorize extreme emotional distress manslaughter and imperfect self-defense manslaughter as affirmative defenses to murder. We now address when a court may properly instruct the jury regarding such affirmative defenses.

## 2. Jury Instructions Regarding Affirmative Defenses

¶ 25 When a criminal defendant requests a jury instruction regarding a particular affirmative defense, the court is obligated to give the instruction if evidence has been presented—either by the prosecution or by the defendant—that provides any reasonable basis upon which a jury could conclude that the affirmative defense applies to the defendant. *See State v. Knoll*, 712 P.2d 211, 214 (Utah 1985) ("[W]hen there is a basis in the evidence, whether the evidence is produced by the prosecution or by the defendant, which would provide some reasonable basis for the jury to conclude that a killing was done to protect the defendant from an imminent threat of death by another, an instruction on self-defense should be given the jury."); *State v. Torres*, 619 P.2d 694, 695 (Utah 1980) (stating that a party is "entitled to have the jury instructed on the law applicable to its theory of the case if there is any reasonable basis in the evidence to justify it").

¶ 26 We have applied this rule with respect to the affirmative defenses of imperfect self-defense manslaughter and extreme emotional distress manslaughter. *See State v. Spillers*, 2007 UT 13, ¶¶ 16, 23, 152 P.3d 315; *State v. Shumway*, 2002 UT 124, ¶¶ 13, 14, 63 P.3d 94. For example, in *Spillers*, we held that a criminal defendant was entitled to a jury instruction on imperfect self-defense manslaughter because the evidence presented by the defendant could have been interpreted by the jury to establish imperfect self-defense. 2007 UT 13, ¶ 23, 152 P.3d 315. We also held that the defendant was entitled to a jury instruction on extreme emotional distress manslaughter because "a rational jury could, adopting Defendant's version of events, find that he was experiencing extreme emotional distress for which there was a reasonable explanation or excuse when he shot [the victim]." *Id.* ¶ 16. This rule does not apply in this case, however, because Low, unlike the defendants in *Spillers* and *Shumway*, did not request that the jury be instructed on extreme emotional distress manslaughter and imperfect self-defense manslaughter. In fact, Low strongly opposed the manslaughter instructions. We must, therefore, determine when a court may include jury instructions regarding affirmative defenses over a defendant's objection.

¶ 27 A court may properly instruct the jury as to an affirmative defense, even if the defendant objects to the instruction, if the defendant has presented evidence supporting the affirmative defense at trial. The court has a duty to instruct the jury on the relevant law, and the court may, even over the defendant's objection, "give any instruction that is in proper form, states the law correctly, and does not prejudice the defendant." *State v. Hansen*, 734 P.2d 421, 428 (Utah 1986). If a defendant presents evidence of an affirmative defense, the defendant is not prejudiced when the jury is instructed regarding that defense. Thus, the court may give the affirmative defense instruction as long as it is in proper form and correctly states the law.

¶ 28 But when a defendant presents no evidence relating to an affirmative defense, a court may not instruct the jury on that affirmative defense. Indeed, when a criminal defendant expresses his intent to not assert an affirmative defense, the prosecution should not be allowed to present evidence of that defense and subsequently request a jury instruction regarding the defense. *See* Utah Code Ann. § 76–1–504 (2003) ("Evidence of an affirmative defense

... shall be presented by the defendant."). To allow the prosecution to do so would effectively foist an affirmative defense upon the defendant. This would be improper because, as a general rule, a defendant cannot be forced to assert an affirmative defense. *See State v. Arguelles,* 2003 UT 1, ¶ 84, 63 P.3d 731 (holding that a pro se defendant could not be forced to present mitigating evidence because "the court has no means to compel a defendant to put on an affirmative defense" (internal quotation marks omitted)); *see also Tremblay v. Overholser,* 199 F.Supp. 569, 570 (D.D.C.1961) (stating the court's opinion that "it is a deprivation of a constitutional right to force any defense on a defendant in a criminal case or to compel any defendant in a criminal case to present a particular defense which he does not desire to advance"); *State v. Jones,* 99 Wash.2d 735, 664 P.2d 1216, 1220 (1983) (stating that courts do not impose affirmative defenses, such as a valid alibi or legitimate self-defense, on an unwilling defendant).

¶ 29 In summary, a defendant is entitled to a jury instruction regarding an affirmative defense whenever there is evidence providing a factual basis for the defense. The prosecution is entitled to a jury instruction regarding an affirmative defense if the defendant has presented evidence supporting that defense. But the prosecution is not entitled to an affirmative defense instruction if the defendant has proffered no evidence in support of that affirmative defense.

3. The Manslaughter Jury Instructions in Low's Case

¶ 30 Having laid out the standards for when a court may properly instruct a jury regarding an affirmative defense over a defendant's objection, we now apply the standards to the facts of Low's case.

a. Imperfect Self–Defense Manslaughter Instruction

¶ 31 We first consider whether the district court properly included the imperfect self-defense jury instruction over Low's objection. We conclude that the imperfect self-defense jury instruction was proper.

¶ 32 As previously noted, the prosecution is entitled to a jury instruction regarding an affirmative defense if the defendant has presented evidence supporting that defense. And when a defendant presents evidence of perfect self-defense, he necessarily presents evidence of imperfect self-defense because "for both perfect and imperfect self-defense, 'the same basic facts [are] at issue.'" *Spillers,* 2007 UT 13, ¶ 23, 152 P.3d 315 (quoting *State v. Howell,* 649 P.2d 91, 95 (Utah 1982)) (alteration in original). Indeed, perfect self-defense and imperfect self-defense require the defendant to present the same evidence: that the defendant had a reasonable belief that force was necessary to defend himself. *See* Utah Code Ann. § 76–2–402(1) (2003) (providing that perfect self-defense requires the defendant to show that he *"reasonably believe[d]* that force [was] necessary to defend himself ... against such other's imminent use of unlawful force" (emphasis added)); *id.* § 76–5–203(4)(a)(ii) (Supp.2007) (providing that imperfect self-defense requires the defendant to show that he acted "under a *reasonable belief* that the circumstances provided a legal justification or excuse for his conduct" (emphasis added)). The difference between perfect self-defense and imperfect self-defense is the determination of whether the defendant's conduct was, in fact, "legally justifiable or excusable under the existing circumstances." *Id.* § 76–5–203(4)(a)(ii) (Supp.2007).

¶ 33 Thus, when a defendant presents evidence of perfect self-defense, he necessarily presents evidence of imperfect self-defense, and the prosecution is entitled to a jury instruction on imperfect self-defense, even over the defendant's objection. Were it otherwise, a defendant could tactically raise the issue of self-defense so that a jury could not find beyond a reasonable doubt that he had committed murder, but could then prevent that same jury from convicting him of imperfect self-defense manslaughter simply by objecting to an imperfect self-defense instruction. We are unwilling to interpret the Utah Criminal Code in a manner that would give defendants such an unfair tactical advantage.

¶ 34 In this case, the district court properly instructed the jury on imperfect self-defense manslaughter because Low introduced evidence, including his own testimony, that he shot Hirschey in self-defense. Low testified that he fired the gun only after Hirschey charged him and that he was in fear for his life when he fired the gun. Because Low presented evidence of self-defense, we find that there was a reasonable basis for the district court to instruct the jury regarding imperfect self-defense.

b. Extreme Emotional Distress Manslaughter Instruction

¶ 35 We next consider whether the district court properly included the extreme emotional distress manslaughter instruction over Low's objection. We conclude that it was error for the court to include the instruction.

¶ 36 The State argues that the jury instruction was proper because "there was evidence that defendant may have killed Hirschey while suffering extreme emotional distress." The State points to testimony from Low, McCall, and Touchette that Hirschey had teased, manhandled, and assaulted Low. This evidence, the State argues, raises the question of whether Low was suffering from extreme emotional distress when he shot Hirschey. We disagree.

¶ 37 Although there was evidence presented by both the prosecution and by Low that Hirschey had mistreated Low throughout the evening of the shooting, there was no evidence that Low was experiencing extreme emotional distress as a result of the mistreatment. Low never testified that he was angered or upset by the mistreatment. And the other witnesses testified that Hirschey's mistreatment did not cause Low to become angry or emotionally distressed. Touchette testified that Low took the mistreatment "in stride" and was not angry. McCall testified that Low "just kind of shrugged it off" and that, mere seconds before the shooting happened, Low did not appear mad at Hirschey.

¶ 38 By including the instruction over Low's objection, the district court foisted upon Low the affirmative defense of extreme emotional distress, which Low did not wish to assert. Because Low did not introduce any evidence of extreme emotional distress, it was error for the district court to include a jury instruction for extreme emotional distress manslaughter.

¶ 39 We find support for our decision in the case of *People v. Bradley,* 88 N.Y.2d 901, 646 N.Y.S.2d 657, 669 N.E.2d 815 (1996). In *Bradley,* a defendant charged with second degree murder asserted the affirmative defense of "not responsible by reason of a mental disease or defect." *Id.* 646 N.Y.S.2d 657, 669 N.E.2d at 816. The State asked the trial court to provide a first degree manslaughter instruction based on extreme emotional disturbance, and the court included the instruction over the defendant's objection. *Id.* The jury found the defendant guilty of manslaughter. *Id.* The Court of Appeals of New York held that it was error for the trial court to include the manslaughter instruction because the defendant's position at trial was that he suffered from a progressive mental illness that "prevented him from appreciating the moral and legal import of his actions," not that he suffered a "temporary loss of control." *Id.* The appellate court concluded that the defendant's right to chart his own defense had been infringed when the trial court instructed the jury regarding the affirmative defense of extreme emotional disturbance over the defendant's objection and reversed the conviction. *Id.*

¶ 40 In this case, Low's consistent position at trial was that he acted out of self-defense. Low did not present any evidence that his actions were due to a temporary loss of control caused by extreme emotional distress. It was therefore error for the district court to submit a jury instruction regarding extreme emotional distress, an affirmative defense that Low did not raise. This error satisfies the first prong of the plain error standard.

E. Obviousness

¶ 41 The second element a defendant must establish to prevail under plain error review is that "'the error should have been obvious to the trial court.'" *Ross,* 2007 UT 89, ¶ 17, 174 P.3d 628 (quoting *Lee,* 2006 UT

5, ¶ 26, 128 P.3d 1179). An error is obvious when "the law governing the error was clear at the time the alleged error was made." *State v. Dean*, 2004 UT 63, ¶ 16, 95 P.3d 276. An error may be obvious if a review of the plain language of the relevant statute reveals the error. *See State v. Portillo*, 914 P.2d 724, 726 (Utah Ct.App.1996).

¶ 42 Under the plain language of Utah Code section 76–5–203(4)(a), extreme emotional distress manslaughter and imperfect self-defense manslaughter are affirmative defenses to murder. Because extreme emotional distress is clearly listed as an affirmative defense to murder, it was obvious error for the district court to force the affirmative defense on Low by including the extreme emotional distress manslaughter instruction over Low's objection. This satisfies the second prong of the plain error standard.

### F.  Harmfulness

¶ 43 The final element a defendant must demonstrate to establish plain error is that the error was harmful. *Dean*, 2004 UT 63, ¶ 22, 95 P.3d 276. An error is harmful if it is "of such a magnitude that there is a reasonable likelihood of a more favorable outcome for the defendant." *Id.* (internal quotation marks omitted). "This harmfulness test is equivalent to the prejudice test applied in assessing claims of ineffective assistance of counsel." *Id.*

¶ 44 The State argues that even if the manslaughter jury instructions were improper, there was no harm because the jury necessarily found Low guilty of murder and then reduced the murder charge to manslaughter based on the affirmative defenses. The State therefore argues that Low would necessarily have been convicted of murder had the jury not been instructed on manslaughter. We disagree.

¶ 45 A necessary element of a murder conviction is the absence of affirmative defenses. "It is fundamental that the State carries the burden of proving beyond a reasonable doubt each element of an offense, including the absence of an affirmative defense once the defense is put into issue." *State v. Hill*, 727 P.2d 221, 222 (Utah 1986); *see also* Utah Code Ann. § 76–1–502 (2003) (requiring the prosecution to negate an affirmative defense by proof if the defendant has presented evidence of the defense). The murder instruction in this case was erroneous because it lacked the necessary element that the State show the absence of the affirmative defenses of extreme emotional distress and imperfect self-defense. Because the absence of affirmative defenses is an element of murder, we are unpersuaded by the State's argument.

¶ 46 Moreover, even if the murder instruction had not been erroneous, the plain language of the jury instructions did not require the jury to find all the elements of murder before it could consider whether to reduce the murder conviction to manslaughter, as the State contends. Rather, there was a jury instruction listing the elements of first degree murder and a separate jury instruction stating that the jury "may also consider whether the defendant has committed the offense of Manslaughter." Because the jury was not instructed to first find all of the elements of murder beyond a reasonable doubt and then—and only then—determine whether to reduce the murder conviction to a manslaughter conviction, the State's harmlessness argument fails.

¶ 47 The district court's error was harmful because we do not know whether the jury convicted Low for manslaughter based on the extreme emotional distress instruction or on the imperfect self-defense instruction. If the jury convicted Low of imperfect self-defense manslaughter, there would be no harm in light of our holding that the district court properly instructed the jury on imperfect self-defense. If, however, the jury convicted Low of extreme emotional distress manslaughter, Low's conviction is based upon an erroneous instruction, and the giving of that instruction was obviously harmful. The difficulty is that the verdict form in this case contains insufficient information for us to determine whether the jury convicted Low of imperfect self-defense manslaughter or extreme emotional distress manslaughter.

¶ 48 The verdict form instructed the jury to determine whether Low was (1) guilty of first degree murder, (2) guilty of manslaugh-

ter, or (3) not guilty. In the event that the jury found Low guilty of manslaughter, the verdict form did not require the jury to specify whether it was convicting Low for imperfect self-defense manslaughter or extreme emotional distress manslaughter. There is a reasonable possibility that the jury convicted Low of extreme emotional distress manslaughter. Had the district court not erroneously instructed the jury on this form of manslaughter, there is a reasonable likelihood that Low may not have been convicted at all. It is this "reasonable likelihood of a more favorable outcome" that makes the error harmful, *Dean*, 2004 UT 63, ¶ 22, 95 P.3d 276, and satisfies the third prong of the plain error standard.

¶ 49 In summary, we conclude that the district court erred by including an extreme emotional distress manslaughter instruction over Low's objection, that the error was obvious based on the plain language of the Utah Criminal Code, and that the error was harmful. Because the district court committed plain error, we reverse Low's conviction.

## II. DOUBLE JEOPARDY

¶ 50 Having determined that the district court's error requires reversal, we must now determine whether a retrial would subject Low to double jeopardy. Low argues that double jeopardy prevents the State from retrying him for murder or for manslaughter. We hold that double jeopardy bars the State from retrying Low for murder and that the statutory scheme bars the State from retrying Low for extreme emotional distress manslaughter or imperfect self-defense manslaughter. The State may, however, amend its information and retry Low for other forms of manslaughter or lesser offenses.

### A. Retrial for Murder

■■ ¶ 51 The United States Constitution, the Utah Constitution, and the Utah Code all provide citizens with protection from double jeopardy. U.S. Const. amend. V; Utah Const. art I, § 12; Utah Code Ann. § 77–1–6(2)(a) (2003). "[T]he double jeopardy guarantee contained in these provisions protects a defendant from (1) a second prosecution for the same offense after acquittal, (2) a second

prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." *State v. Rudolph*, 970 P.2d 1221, 1230 (Utah 1998).

■■■ ¶ 52 The double jeopardy guarantee does not protect a defendant from a retrial for an offense when his conviction for that same offense has been reversed on appeal as a result of trial error. *Burks v. United States*, 437 U.S. 1, 15, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Green v. United States*, 355 U.S. 184, 189, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957); *see also Rudolph*, 970 P.2d at 1230–31 ("[D]ouble jeopardy does not generally bar a second trial when a conviction was successfully vacated on appeal."). A caveat to this general rule is that when the conviction of a lesser offense implies an acquittal of a greater offense, double jeopardy bars retrial of the greater offense if the conviction for the lesser offense is reversed on appeal. *Price v. Georgia*, 398 U.S. 323, 329, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970); *Green*, 355 U.S. at 190–91, 78 S.Ct. 221.

¶ 53 For example, the criminal defendant in *Price* was charged with murder and convicted of manslaughter, but successfully obtained a reversal of the manslaughter conviction on appeal. 398 U.S. at 324, 90 S.Ct. 1757. The United States Supreme Court held that the Double Jeopardy Clause barred retrial for murder because the defendant's conviction on the manslaughter charge implicitly acquitted him of the murder charge. *Id.* at 329, 90 S.Ct. 1757; *see also Green*, 355 U.S. at 190–91, 78 S.Ct. 221 (holding that the Double Jeopardy Clause barred retrial on first degree murder when the defendant was charged with first degree murder, was convicted of second degree murder, and was successful in obtaining a reversal of the second degree murder conviction on appeal).

¶ 54 The underlying rationale for the caveat is that (1) because a conviction on a lesser offense necessarily implies an acquittal of the greater offense and (2) because double jeopardy bars a second prosecution for the same offense after an acquittal, a defendant who is convicted of the lesser offense cannot be retried for the greater offense, even if the conviction for the lesser offense is reversed

on appeal. *See* Utah Code Ann. § 76–1–403(2) ("A finding of guilty of a lesser included offense is an acquittal of the greater offense even though the conviction for the lesser included offense is subsequently reversed, set aside, or vacated."); *Rudolph,* 970 P.2d at 1230 ("[T]he double jeopardy guarantee ... protects a defendant from ... a second prosecution for the same offense after acquittal....").

■ ¶ 55 In this case, Low was charged with first degree murder, but was convicted of manslaughter by a jury. The conviction of the lesser offense of manslaughter constitutes an implied acquittal of the greater offense of murder.[4] Because Low was acquitted of murder, double jeopardy prevents the State from retrying Low for that offense.

### B. Retrial for Extreme Emotional Distress Manslaughter and Imperfect Self–Defense Manslaughter

■ ¶ 56 As previously noted, "double jeopardy does not generally bar a second trial when a conviction [is] successfully vacated on appeal." *Rudolph,* 970 P.2d at 1230–31. Thus, when a criminal defendant is charged with murder but convicted of manslaughter, and the manslaughter conviction is reversed on appeal, double jeopardy does not bar retrial for manslaughter. *See Price,* 398 U.S. at 329, 90 S.Ct. 1757 (holding that the Double Jeopardy Clause barred retrial for murder, but not for manslaughter); *United States v. Larkin,* 605 F.2d 1360, 1368 (5th Cir.1979) ("[I]t is ... well settled that a

defendant may be retried on a lesser offense, of which he was convicted at an initial trial, after that conviction was reversed on appeal...."). Because Low was convicted of manslaughter, double jeopardy would ordinarily not bar retrial for manslaughter.

■ ¶ 57 While double jeopardy protections do not prevent the State from retrying Low for manslaughter, the statutory framework prevents the State from retrying him for extreme emotional distress manslaughter or imperfect self-defense manslaughter. Low was convicted of manslaughter based upon either extreme emotional distress or imperfect self-defense.[5] But under the plain language of the Utah Criminal Code, extreme emotional distress and imperfect self-defense exist only as affirmative defenses to murder. Utah Code Ann. § 76–5–203(4)(a) (Supp.2007). As such, extreme emotional distress manslaughter and imperfect self-defense manslaughter are no longer chargeable offenses. It would be improper to allow the State to retry Low for offenses with which he could not have been originally charged. We therefore conclude that the State cannot retry Low for extreme emotional distress manslaughter or imperfect self-defense manslaughter.[6]

### C. Retrial for Manslaughter and Lesser Offenses

■ ¶ 58 Although double jeopardy bars the State from retrying Low for murder and the Utah Criminal Code bars the State from

---

**4.** As we previously have noted in this opinion, the jury instruction regarding first degree murder was erroneous because it lacked the requirement that the State prove the absence of the affirmative defenses raised by Low. The omission of this element arguably made it easier for the jury to convict Low of first degree murder. And even with the omission, the jury still rejected first degree murder in favor of manslaughter. Because the State was unable to convince the jury to convict Low of murder, the jury's conviction of manslaughter constituted an implicit acquittal of the murder charge.

**5.** As previously noted, because the jury verdict form did not require that the jury identify the affirmative defense on which it relied to convict Low of manslaughter, we are unable to determine whether the jury relied on extreme emotional distress or imperfect self-defense.

**6.** The strange result in this case highlights an apparent practical problem with the legislature's decision to remove extreme emotional distress and imperfect self-defense from the manslaughter statute, where they were chargeable offenses, and redefine them only as affirmative defenses to murder. Despite the strange result, we are bound by legislative enactments and therefore must apply the law as written. *See Wagner v. Utah Dep't of Human Servs.,* 2005 UT 54, ¶ 63, 122 P.3d 599 ("[I]t is not our role as a judiciary to override the legislature ... [but] only to interpret and apply the law as it is."); *Fay v. Indus. Comm'n,* 100 Utah 542, 114 P.2d 508, 516 (1941) ("It is our function to apply the law as written by the legislature, barring constitutional questions, and not to legislate because we think the law should be otherwise.").

charging Low with extreme emotional distress manslaughter and imperfect self-defense manslaughter, nothing prohibits the State from filing an amended information containing charges for other forms of manslaughter or other lesser offenses that the State believes are supported by the facts of the case. "[C]ourts have held that the Double Jeopardy Clause does not bar retrial of defendants on new indictments after their original convictions were reversed on appeal." *United States v. Newman,* 6 F.3d 623, 627 (9th Cir.1993); *see also United States v. Poll,* 538 F.2d 845, 847 (9th Cir.1976) ("[W]hen the first conviction has been reversed and the matter remanded, the slate has been wiped clean and the Government is free to prosecute the defendant on a different statutory violation regardless if it is considered the same or a separate offense."); *Thomas v. State,* 473 So.2d 627, 629 (Ala. Crim.App.1985) (finding no double jeopardy violation when the defendant was indicted and convicted of intentional murder and robbery, the conviction was reversed on appeal because of an erroneous jury instruction, and the defendant was reindicted for felony murder and reckless murder).

¶ 59 To allow Low to escape trial for offenses that may be supported by the facts because of our reversal of his manslaughter conviction would provide him with an unjustified windfall. *Jones v. Thomas,* 491 U.S. 376, 387, 109 S.Ct. 2522, 105 L.Ed.2d 322 (1989) ("[N]either the Double Jeopardy Clause nor any other constitutional provision exists to provide unjustified windfalls."). The Supreme Court has noted that

> [c]orresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction.... [T]he practice of retrial serves defendants' rights as well as society's interest.

*United States v. Tateo,* 377 U.S. 463, 466, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964). Permitting the State to retry Low for manslaughter and/or lesser offenses that the State believes are supported by the facts correctly balances Low's right to be free from double jeopardy with the State's interest in punishing those who have committed crimes against society.

¶ 60 We therefore conclude that although the State cannot retry Low for murder, extreme emotional distress manslaughter, or imperfect self-defense manslaughter, the State may file an amended information and retry Low for other forms of manslaughter or lesser offenses.

## III. ISSUES FOR RETRIAL

¶ 61 Although we reverse Low's conviction and remand the case for retrial based on the district court's erroneous inclusion of the extreme emotional distress manslaughter instruction, there are other issues presented on appeal that will likely arise during retrial. We therefore exercise our discretion to address those issues for purposes of providing guidance on remand. *See State v. James,* 819 P.2d 781, 795 (Utah 1991) ("Issues that are fully briefed on appeal and are likely to be presented on remand should be addressed by this court."). Much of the briefing on these issues related to preservation and prejudice. Those matters do not concern us because our discussion of these issues is in the context of providing guidance for retrial, rather than in determining whether the district court erred in the previous trial. We therefore decline to address the State's preservation and prejudice arguments.

¶ 62 The issues we examine are (1) whether the flight instruction was complete, (2) whether Low's custodial statements were properly admitted, and (3) whether Low's testimony from the first trial was properly admitted in the second trial.

### A. Flight Instruction

¶ 63 Low argues that the jury instruction regarding flight, which was given in his second trial, was incomplete. The flight instruction provided:

> The flight or attempted flight after a killing of another is not sufficient in itself to establish a person's guilt, but is a fact which, if proved, may be considered by you

in the light of all other proved facts in deciding whether a defendant is guilty or not guilty. The weight to which this circumstance is entitled is a matter for you to decide.

¶ 64 This flight instruction is similar to the flight instruction at issue in *State v. Bales,* 675 P.2d 573, 574 (Utah 1983). In that case, we held that the flight instruction was not "completely free from criticism" because it did not "advise[ ] the jury that there may be reasons for flight fully consistent with innocence and that even if consciousness of guilt is inferred from flight it does not necessarily reflect actual guilt of the crime charged." *Id.* at 575; *see also State v. Franklin,* 735 P.2d 34, 39 (Utah 1987).

¶ 65 The flight instruction in this case is incomplete for the same reasons. Indeed, the State acknowledges the instruction's incompleteness. We do not express any opinion on whether the incomplete flight instruction would have warranted reversal in this case. Rather, if the district court provides a flight instruction on retrial, we advise the court to ensure that the instruction is complete.

### B.   Custodial Statements

¶ 66 Low argues that his custodial statements recorded by the arresting officer should have been suppressed. We agree and advise the district court to suppress those statements on retrial.

¶ 67 Prior to the first trial, Low filed a motion to suppress his custodial statements recorded by Officer King, arguing that they had been obtained in violation of Low's *Miranda* rights. The district court concluded that Low's statements were admissible, with the exception of a few inaudible comments. At trial, a transcript of the dialogue between Low and Officer King was read to the jury by Officer King. Additionally, some of Low's statements were used against him in cross-examination. In the second trial, Low did not ask the district court to revisit the issue of admissibility of the custodial statements, and a transcript of the dialogue was again read to the jury by Officer King. In addition, Low's testimony from the first trial was read to the jury. Thus, the jury heard the custo-

dial statements through the live testimony of Officer King and in the reading of the State's cross-examination of Low from the first trial.

¶ 68 The Fifth Amendment guarantees that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. To protect this right, the Supreme Court held in *Miranda v. Arizona* that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

¶ 69 "[C]ustodial interrogation occurs where there is (1) custody or other significant deprivation of a suspect's freedom and (2) interrogation." *State v. Levin,* 2006 UT 50, ¶ 34, 144 P.3d 1096. In this case, the State concedes that Low was in custody when Officer King activated his tape recorder. We therefore focus on the question of whether Low was interrogated.

¶ 70 "Interrogation is 'either express questioning or its functional equivalent' and it incorporates any 'words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response.' " *Levin,* 2006 UT 50, ¶ 37, 144 P.3d 1096 (emphasis removed) (quoting *Rhode Island v. Innis,* 446 U.S. 291, 300–02, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980)). While statements arising from interrogation are governed by the Fifth Amendment, "[v]olunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by [the *Miranda* decision]." *Miranda,* 384 U.S. at 478, 86 S.Ct. 1602. "The law of this state also recognizes that words or actions normally attendant to arrest and custody do not constitute interrogation." *State v. Dutchie,* 969 P.2d 422, 426 (Utah 1998).

¶ 71 In this case, Officer King did not initiate direct questioning of Low. Thus, the question before us is whether Officer King's statements and conduct were the "functional equivalent" of express questioning. *See State v. Yoder,* 935 P.2d 534, 545 (Utah Ct.

App.1997). We must determine whether Officer King's words and actions were "words or actions [Officer King] should have known were reasonably likely to elicit an incriminating response from [Low]." *Id.*

¶ 72 The facts of this case present a very close question. We agree with the State that many of Low's statements were voluntary statements that do not fall under the scope of *Miranda.* *See* 384 U.S. at 478, 86 S.Ct. 1602. We also agree with the State that many of Officer King's statements were questions normally attendant to arrest and custody, *see Dutchie,* 969 P.2d at 426, or agreements with Low's unsolicited and voluntary statements, *see Yoder,* 935 P.2d at 546, that do not constitute interrogation or its functional equivalent.

¶ 73 But some of Officer King's statements were reasonably likely to elicit an incriminating response. For example, at one point during the conversation, Officer King told Low, "Sometimes you just need to talk to somebody, huh?" Shortly thereafter, Low stated, "I don't want to talk too much," to which Officer King responded, "That's up to you."

¶ 74 In addition to the statements themselves, we find significant Officer King's refusal to read Low his rights. Immediately upon being arrested, Low specifically asked Officer King, "Will you read me my rights, please." Officer King responded, "When I start asking you questions, at the proper time, I'll read you your rights, okay?" To a person untrained in the law, an officer's refusal to read him his rights may suggest that anything he says before being read his rights will not be used against him. Officer King's refusal to read Low his rights may have given Low a false sense of security in making statements to Officer King that, unknown to Low, were being recorded. This false sense of security arising from Officer King's refusal to read Low his rights taints the conversation that followed and increases our concern regarding Officer King's statements that Low "just need[ed] to talk to somebody" and that Low's decision to talk was "up to [him]." We accordingly hold that Officer King's refusal to read Low his rights, coupled with Officer King's statements during the conver-

sation, qualify as words or actions that Officer King should have known would elicit incriminating statements from Low. Officer King's words and actions were, therefore, the functional equivalent of express questioning, and Low's statements must be suppressed.

¶ 75 We pause to clarify that our holding in this case does not suggest the existence of a constitutional violation in every case where a defendant asks to be read his rights, the officer declines to do so, and the defendant then makes unsolicited, voluntary statements. Nor do we opine on whether a constitutional violation would have occurred in this case absent Low's request to be read his rights and Officer King's refusal. Rather, we limit our determination to the specific facts presented herein and advise the district court that Low's custodial statements should be suppressed at retrial, if Low so requests.

### C. Testimony from the First Trial

¶ 76 Low did not testify in the second trial, but the district court permitted the State, over Low's objection, to read to the jury his testimony from the first trial. Low argues that the district court erred by permitting the State to present his testimony from the first trial over his objection.

¶ 77 Generally, "a defendant's testimony at a former trial is admissible in evidence against him in later proceedings." *Harrison v. United States,* 392 U.S. 219, 222, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968). However, when a defendant is compelled to testify as a result of evidence that is illegally obtained and improperly admitted, the defendant's testimony is inadmissible in a later trial. *Id.* at 222–24, 88 S.Ct. 2008. Accordingly, if a defendant chooses not to testify at retrial and the prosecution seeks to admit the defendant's testimony from the first trial, the court must determine why the defendant testified in the first trial. *See id.* at 223, 88 S.Ct. 2008 ("The question is not *whether* the [defendant] made a knowing decision to testify, but *why.*"). The burden is on the prosecution to "show that [the government's] illegal action did not induce [the defendant's] testimony." *Id.* at 225, 88 S.Ct. 2008; *see also United States v. Pelullo,* 105 F.3d 117,

125 (3d Cir.1997) ("The burden of proving that the defendant would have testified had the government not committed the violation lies with the government.").

¶ 78 In this case, the district court in the second trial acted under the assumption that Low's custodial statements had been legally obtained and properly admitted in the first trial. As a result, when deciding whether to allow the State to introduce Low's testimony from the first trial, the court took no evidence and made no findings regarding whether Low had been compelled to testify in the first trial as a result of the improper admission of his custodial statements. Our holding that Low's custodial statements were illegally obtained and improperly admitted may require the district court to make these determinations on remand. If Low chooses not to testify at retrial and the State asks for the admission of Low's testimony from the first trial, the district court will need to determine whether the erroneous admission of Low's custodial statements compelled him to testify in the first trial. If the State carries its burden in showing that Low was not compelled to testify due to the admission of the custodial statements, the court may admit Low's prior testimony. If, however, the State does not carry its burden, Low's prior testimony must be excluded.

## CONCLUSION

¶ 79 We reverse Low's manslaughter conviction and remand for further proceedings consistent with this opinion.

¶ 80 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice WILKINS, and Justice NEHRING concur in Justice PARRISH'S opinion.