2013 UT App 164

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
CHARLES ADAM SWOGGER,
Defendant and Appellant.

Memorandum Decision
No. 20120043-CA
Filed July 5, 2013

Fifth District, St. George Department
The Honorable G. Rand Beacham
No. 091502055

Gary G. Kuhlmann and Nicolas D. Turner,
Attorneys for Appellant
John E. Swallow and Kris C. Leonard, Attorneys
for Appellee

JUDGE STEPHEN L. ROTH authored this Memorandum Decision, in
which JUDGES JAMES Z. DAVIS and CAROLYN B. MCHUGH
concurred.

ROTH, Judge:

¶1 Charles Adam Swogger pleaded guilty with a mental illness at the time of the offenses to aggravated sexual assault, attempted murder, and aggravated burglary. The district court imposed statutory prison terms for each offense, and Swogger appeals the court's sentencing decision. We affirm.

¶2 Swogger raises two issues. First, he contends that the district court plainly erred when it failed to conduct a hearing to determine his present mental state. Second, he argues that the court committed plain error when it decided to sentence him to the Utah

State Prison rather than commit him to the Utah State Hospital. Specifically, Swogger contends that under the guilty with a mental illness statutes, the court was required to first determine whether the state hospital was an appropriate placement before it could sentence him to prison and that the court failed to do so. "To prevail under plain error review, a defendant must demonstrate that [1] an error exists; [2] the error should have been obvious to the trial court; and [3] the error was harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome." *State v. Low*, 2008 UT 58, ¶ 20, 192 P.3d 867 (alterations in original) (citation and internal quotation marks omitted).

## I. Swogger Invited the District Court To Accept His Pleas Without Holding a Hearing.

¶3    Swogger first contends that the district court erred when it failed to conduct a hearing to assess whether he currently had a mental illness, as required by Utah Code section 77-16a-103 (section 103). Section 103 reads, "Upon a plea of guilty with a mental illness at the time of the offense being tendered by a defendant to any charge, the court shall hold a hearing within a reasonable time to determine whether the defendant currently has a mental illness." Utah Code Ann. § 77-16a-103(1) (LexisNexis 2012).[1] At the time Swogger entered his pleas, however, he represented to the court, through counsel, that "the State is willing to stipulate that [Swogger] is suffering from a mental illness *which would take away the necessity for the Court to have a hearing on whether he's currently suffering from a mental illness*." (Emphasis added.) The State affirmed its agreement, and the court accepted the stipulation, stating, "[T]hat's sufficient, then." Thus, if the district court erred in failing to hold a hearing, it did so at Swogger's invitation. It is well settled that "a party cannot take advantage of an error committed at trial when the party led the trial court into

---

1. The pertinent statutes have not changed since the time of Swogger's pleas.

committing the error," and accordingly, we "decline[] to engage in even plain error review when counsel, either by statement or act, affirmatively represented to the [trial] court that he or she has no objection to the [proceedings]." *Pratt v. Nelson*, 2007 UT 41, ¶¶ 16–17, 164 P.3d 366 (alterations in original) (citations and internal quotation marks omitted).

¶4     In his reply brief, Swogger "concedes that the invited error doctrine may apply to [his] first claim." He argues that we should nevertheless overlook the invitation because he did not intentionally mislead the court so as to "'preserve a hidden ground for reversal on appeal.'" (Quoting *id.* ¶ 17.) The invited error doctrine, however, serves an additional purpose beyond preventing a defendant from taking advantage of an error he or she created: it allows the district court an opportunity to address the issue in the first instance. *State v. Geukgeuzian*, 2004 UT 16, ¶ 12, 86 P.3d 742. This second purpose has been the basis for application of the invited error doctrine even when the statement inviting the error was "likely inadvertent and not a conscious attempt to mislead the trial court." *Id.* (refusing to review a claim that a jury instruction was erroneous because it did not contain a mens rea requirement where defense counsel had "affirmatively purported to list all 'essential elements'" in the proposed instruction). We therefore conclude that Swogger's representation to the court that no hearing was required, even if not intended to mislead, falls within the realm of invited error. Accordingly, we will not consider Swogger's claim that the court plainly erred by not holding a hearing regarding his mental condition as a part of his plea process. Instead, we turn to Swogger's claim that the district court erred in sentencing him directly to prison rather than first to the state hospital.

### II. The District Court Did Not Plainly Err in Sentencing Swogger to Prison Rather than to the State Hospital.

¶5     Applicable law requires that once the district court has concluded that a defendant who offers to enter a plea of guilty with a mental illness actually suffers from a mental illness, it must accept the plea and then sentence the defendant "in accordance with Section 77-16a-104" (section 104). Utah Code Ann. § 77-16a-103(4). Section 104 directs the court to "impose any sentence that could be imposed under law upon a defendant who does not have a mental illness and who is convicted of the same offense" and then to determine how that sentence will be served: (1) at the state hospital, (2) on probation, or (3) if "commitment to the [state hospital] or probation . . . is not appropriate," in prison. *Id.* § 77-16a-104(3). Swogger contends that the plain language of the statute contemplates that imprisonment be the placement of last resort, an option available only after the court determines that the state hospital is not an appropriate placement.[2]

A. The District Court Did Eliminate the State Hospital as an Appropriate Placement Prior to Sentencing Swogger to Prison.

¶6     This court need not decide whether Swogger's interpretation of section 104 is correct because it appears that the district court actually engaged in an evaluation of the sentencing options in accordance with the statutory interpretation Swogger advances. Specifically, in connection with deciding that Swogger should serve his time at the prison, the district court determined that placement at the state hospital was not appropriate. From the time of Swogger's initial appearance on the charges, concerns arose about his competency to stand trial. The court immediately ordered an examination of Swogger's competency, and over the next twenty-one months Swogger was evaluated by a neuropsychiatric

---

2. Swogger concedes that, given the severity of his crimes, probation was not an option.

physician and three psychologists, including one state hospital psychologist who examined Swogger while he was housed at the state hospital in an effort to restore his competency. All of these reports were available to the court at the time of sentencing. Furthermore, at sentencing, the court also had a presentence investigation report from Adult Probation and Parole and statements from both victims of Swogger's crimes. In addition, the judge who sentenced Swogger had the opportunity to observe and interact with Swogger over a period of nearly two years and was able to apply this experience to his determination of where Swogger should serve his sentence.

¶7     After examining the extensive information available, the court made an explicit determination that committing Swogger to the state hospital was clearly inappropriate. Under the statute, commitment to the state hospital is an option only if the court finds both that the defendant's mental illness causes "an immediate physical danger to self or others, including jeopardizing the defendant's own or others' safety, health, or welfare *if placed in a correctional . . . setting*," and that the state hospital is equipped to provide the defendant with the appropriate "treatment, care, custody, and *security*." *Id.* § 77-16a-104(3)(a)(ii) (emphasis added). The information before the court, however, did not demonstrate that Swogger would be too dangerous to deal with in prison and supported a conclusion that the state hospital itself was not equipped to provide either adequate treatment or security. For example, the court described Swogger's crimes as "savage and brutal," even drawing a comparison to "an attack by a wild animal" but "worse than that" because "[i]t was premeditated, and it was heartless." The court also noted Swogger's menacing behavior toward staff and other patients when previously committed to the state hospital as a basis for its conclusion that the state hospital was not a viable placement option. Specifically, in its written report to the court, the state hospital had expressed serious concerns about its ability to safely house Swogger because he "had at least five incidents of physical aggression toward patients and [state hospital] staff (including spitting in his social worker's face)"

and he had made explicit threats to "attack and rape staff." As a result, the staff was administering psychotropic medication to Swogger and restricting his physical movement with "wrist-to-waist restraints."[3] The other information available to the court suggested, as well, that the state hospital would not be able to effectively treat Swogger's condition. In their competency reports, two psychologists explained that although Swogger appeared to be suffering from antisocial personality disorder and exhibited some symptoms of psychosis, they were concerned that his more severe symptoms were the product of malingering. A psychologist at the state hospital shared that concern, stating that Swogger's scores on a test "used to assess . . . exaggerated psychopathology" indicated an increased likelihood of feigning.

¶8    Based on this information, the court found,

> His rehabilitative needs, well, . . . I suppose we could hope that psychologists working with Mr. Swogger would be able to fix what it is that ails him . . . . I'm not really very optimistic about that. I certainly hope that he's able to get some kind of mental health treatment through the Department of Corrections, but I don't see that as being very optimistic or very likely to produce good.
> And under these circumstances and because Mr. Swogger has so recently been to the Utah State Hospital and been evaluated there and because in my judgment I don't think he deserves to be considered for further mental health treatment, . . . I think he needs to be committed directly to the Utah State Prison.

---

3. In contrast, the Department of Corrections recommended that Swogger be sentenced to prison, implicitly indicating that he was not too dangerous to be safely managed there.

The court further explained that only the state prison could handle "the risk that Mr. Swogger poses to peaceful and law-abiding citizens." Specifically, the court stated,

> [W]hat has been discovered through very careful attention given to him over some long period of time just doesn't persuade me that this is somebody who is beyond his own control, but it is somebody who is mentally ill in ways that result in crime and are dead certain to result in more crime . . . .

"[W]ithout some extremely grand change in his makeup," the court concluded, Swogger "is too dangerous to ever be released" into the community. The court then sentenced Swogger to the statutory prison terms.

¶9     Thus, the district court determined that the state hospital was not a viable placement prior to sentencing him to prison, as Swogger claims section 104 requires. In arriving at this conclusion, the court appropriately evaluated the statutory criteria and determined both that the Department of Corrections could adequately manage Swogger's risk to himself and others "in a correctional . . . setting" and that the state hospital was unlikely to be able either to treat him or to safely deal with his aggression. *See* Utah Code Ann. § 77-16a-104(3)(a)(ii) (LexisNexis 2012). The court's conclusions were amply supported by the record. Thus, Swogger has not established that the court made any error, much less an obvious one, in its sentencing decision. *See State v. Low*, 2008 UT 58, ¶ 20, 192 P.3d 867 (requiring the defendant to show an obvious error to support a claim of plain error).

B. The District Court Was Not Required To Hold a Hearing as a Part of Sentencing.

¶10     Swogger next complains about the process by which the district court came to its sentencing decision. Swogger appears to assert two statutory bases to support his claim that the court must

conduct a sentencing hearing. First, he argues that sections 103 and 104 require such a hearing. To support his contention, Swogger relies on the Utah Supreme Court's analysis in *State v. Copeland*, 765 P.2d 1266 (Utah 1988), which says, "Before sentencing, the court *shall* conduct a hearing to determine the defendant's present mental state." *Id.* at 1270 (internal quotation marks omitted). *Copeland*, however, applies the 1988 version of section 104, a fact that Swogger recognizes. Under the present version of section 104, a district court is required to hold a hearing to assess the defendant's current mental state only after the defendant is adjudicated guilty with a mental illness *at a trial*. Utah Code Ann. § 77-16a-104(1) ("Upon a *verdict* of guilty with a mental illness . . . , the court shall conduct a hearing to determine the defendant's present mental state." (emphasis added)). Swogger was not tried, but rather pleaded guilty with a mental illness, and the plea process is governed by section 103, not section 104. *See id.* § 77-16a-103 (entitled "Plea of guilty with a mental illness at the time of the offense"). Section 103 also requires the court to conduct a hearing but only in connection with its acceptance of a plea of guilty with a mental illness. *Id.* § 77-16a-103(1) ("Upon a plea of guilty with a mental illness at the time of the offense being tendered by a defendant to any charge, the court shall hold a hearing within a reasonable time to determine whether the defendant currently has a mental illness."). This hearing is for the purpose of determining whether the defendant currently has a mental illness and the nature and extent of that illness. If the defendant is found to be mentally ill, he will then be sentenced in accordance with the guidelines laid out in section 104,[4] which offer the court the

---

4. Once the plea of guilty and mentally ill is entered, section 103 directs the court to follow the sentencing provisions set out in section 104. *See* Utah Code Ann. § 77-16a-103(4) (LexisNexis 2012) ("If the court concludes that the defendant currently has a mental illness, the defendant's plea shall be accepted and the defendant shall be sentenced in accordance with Section 77-16a-104."); *id.*

(continued...)

additional option of commitment to the state hospital, an option not otherwise available under Utah's statutory sentencing scheme. *See generally id.* § 76-3-201(2) (including probation and imprisonment, but not commitment to the state hospital, in the options available to a court when sentencing a convicted criminal defendant who does not have a mental illness). As we have already concluded, any error in not conducting the designated hearing at the plea stage was invited. *See supra* ¶¶ 3–4.

¶11   Swogger seeks to avoid the invited error problem by arguing that the court was required to conduct a second hearing prior to sentencing, under section 104, where the state hospital must be afforded an opportunity to evaluate him. *See id.* § 77-16a-104(3)(a)(i) (requiring "the court [to] give[] the [state hospital] the opportunity to provide an evaluation and recommendation" prior to the court deciding to send the defendant to the state hospital); *see also id.* § 77-16a-104(4). In the context of a plea, however, section 104 only requires the court to make a determination as to whether a defendant should be committed to the state hospital, not necessarily to hold an evidentiary hearing in order to reach that decision. Rather, section 104 provides that with regard to a defendant who "currently has a mental illness," the court is to "commit the defendant to the [state hospital]" only if "the court gives the [state hospital] the opportunity to provide an evaluation and recommendation" by "notify[ing] the [hospital's] executive director of the *proposed placement* and provid[ing] the [state hospital] with an opportunity to evaluate the defendant and make a recommendation to the court regarding placement prior to commitment." *Id.* § 77-16a-104(3)(a), (4) (emphasis added).

¶12   Although we agree that a hearing may be helpful to the court in reaching a sentencing decision regarding state hospital

---

4. (...continued)
§ 77-16a-104(3) (outlining the sentencing process for persons with mental illness).

placement, we are not convinced that section 104 plainly *requires* a second hearing as a part of sentencing where the court is required to hold a hearing only in connection with accepting the plea under section 103. Indeed, the section 103 hearing might well provide information useful to the sentencing. In this case, the court did not hold a section 103 hearing—at the parties' invitation—but it clearly had ample evidence about Swogger's mental state from the extensive evaluations that occurred before Swogger entered his pleas, including a significant report from the state hospital itself. In fact, the abundance of available information appears to have been the underlying motivation for each side (and the court) to forego the hearing in the first place. We conclude that the commitment provisions of section 104 did not require a separate hearing to determine whether Swogger should be committed to the state hospital. And we have already concluded that the district court had ample relevant information on which to base its determination that commitment to the state hospital was not appropriate and that commitment to prison was.

¶13 Thus, the decision to commit Swogger to the Utah State Prison was well within the court's discretion under the statute. Because Swogger has not shown any error on the part of the district court, much less a harmful error, Swogger's claims of plain error must fail. Accordingly, we affirm the district court's sentencing decision.

———————