COMMONWEALTH *vs.* JAMES DARBY.

No. 93-P-1346

Berkshire. September 9, 1994. - November 21, 1994.

Present: SMITH, IRELAND, & GREENBERG, JJ.

*Evidence*, Photograph, Relevancy and materiality. *Practice*, *Criminal*, Trial jury-waived.

At the trial of indictments charging rape and abuse of a child without force and indecent assault and battery on a child under fourteen, there was no proper foundation for the admission of two offensive and inflammatory photographs, one of the alleged victim and one of the defendant; moreover, the relevance of the photographs was marginal at best or nonexistent: where evidence of the defendant's guilt was not overwhelming and where it appeared that the judge considered the photographs in arriving at the guilty verdicts, the admission of the photographs was prejudicial error. [652-656]

Before the retrial of indictments, the issue of the defendant's access to certain records of the Department of Social Services pertaining to the alleged victim should be addressed. [656]

INDICTMENTS found and returned in the Superior Court Department on December 11, 1990.

The case was heard by *William W. Simons*, J., and motions for posttrial discovery and for a new trial were heard by him.

*Charles K. Stephenson* for the defendant.

*Paul J. Caccaviello*, Assistant District Attorney, for the Commonwealth.

SMITH, J. The defendant was the subject of five indictments that charged him with rape and abuse of a child, no force (G. L. c. 265, § 23), and one indictment that charged him with indecent assault and battery on a child under fourteen (G. L. c. 265, § 13B). All the indictments shared the same time frame (March 1, 1989, to October 24, 1990) and the same victim.

The defendant waived a jury trial, and the indictments were tried before a Superior Court judge. At the conclusion of the trial, the judge entered not guilty verdicts on two of the rape indictments and returned guilty verdicts on the remaining indictments.

The defendant, with new counsel, filed a motion for a new trial with supporting affidavits claiming that he was deprived of the effective assistance of counsel at his trial. At the same time, the defendant requested an evidentiary hearing and filed motions for posttrial discovery. After a hearing, the judge denied the discovery motions and also the motion for a new trial. On appeal, the defendant claims error in the conduct of the trial and in the denial of his posttrial motions. We summarize the evidence as background for our analysis.

The complainant, whom we shall call Mark, was twelve years old at the time of the trial. He is mildly retarded and has a history of emotional disturbances[1]; the Department of Social Services (department) has provided services to Mark and his family since 1988.

Mark testified that during the relevant period he lived in North Adams with his mother, sister, brother, and the defendant, who was his mother's boyfriend. He told of instances where the defendant touched and "squeezed" his penis. Mark also testified that the defendant put his finger up Mark's rectum, on two occasions had performed fellatio on him, and that the defendant had Mark perform fellatio on him. According to Mark these incidents had taken place when his mother was not at home.

The only other witness for the Commonwealth was a police officer who had investigated this case upon its referral from

---

[1]During the course of the cross-examination of Mark, he became quite agitated and said to defense counsel "shut up" and "fuck you." He also told defense counsel that the courthouse "looked like your face" and "you're stupid." The judge noted at a sidebar conference during cross-examination that "this is a kind of witness that is a great challenge to any attorney as far as examination, certainly cross-examination . . . ."

One of the issues raised by the defendant on appeal is that he was deprived of his right for a meaningful cross-examination by the attitude of the witness. Because of our decision we need not reach this issue.

the department. The police officer had interviewed Mark and recounted the incidents as related in the complainant's testimony. Through the officer, the Commonwealth introduced as exhibits, two photographs, one of the complainant and one of the defendant. The admission of these photographs forms one of the issues on appeal and is discussed below.

After the Commonwealth rested, the defendant testified and denied Mark's allegations. A stipulation entered into by the prosecutor and defense counsel was read into the record. It stated that Mark had told a social worker in 1988 that his grandmother and her boyfriend had molested him and that Mark's allegations were substantiated by the department. Mark, while testifying, had denied that his grandmother and her boyfriend had molested him.

1. *The admission in evidence of certain photographs.* At a lobby conference prior to trial, the prosecutor informed the judge and defense counsel that two photographs were "found among the defendant's belongings. . . . One is a picture of [Mark], one is of [the defendant], *they are both together . . . ."* (Emphasis supplied.) According to the prosecutor, the photograph of Mark depicts a "naked picture of a little boy and, obviously fondling himself in the bathroom, the only picture found with it is a picture of the defendant with an exposed penis." Defense counsel objected to their introduction in evidence and the judge reserved his decision on their admissibility.

At trial, the police officer testified that the two photographs were turned over to him by a victim-advocate. He identified the individuals in the photographs to be Mark and the defendant. Contrary to the prosecutor's representation at the lobby conference, the photographs do not show Mark and the defendant together. Rather, the photographs show separately (1) Mark sitting in a bathtub alone, naked, and, it would appear, fondling himself, and (2) the defendant alone, sitting on a couch fully dressed, with his penis exposed in a discernibly turgid state. The defendant objected to their introduction in evidence. The judge overruled the objection and ruled that the photographs had "some probative value." On

appeal, the defendant argues that it was reversible error to admit the photographs because there was no foundation for the admission, they did not have any relevance, and they were inflammatory.

"To be admissible in evidence, a photograph must be shown to be accurate and bear enough similarity to circumstances at the time in dispute to be relevant and helpful to the jury in its deliberations." *Henderson* v. *D'Annolfo*, 15 Mass. App. Ct. 413, 428 (1983).

The Commonwealth argues that the photographs were admissible because the officer testified that he had seen both Mark and the defendant on prior occasions and identified the photographs as being likenesses of them. There was, however, no evidence of when the photographs were taken in relation to the crimes for which the defendant was on trial. In that regard, the Commonwealth argues that the judge could have determined the date of the photographs by comparing the appearance of the individuals in court with the photographs themselves. There is some merit to the Commonwealth's argument as to Mark's photograph but none whatsoever in regard to the defendant's photograph. Further, there was no evidence of who found the photographs, where they were found, under what circumstances they were found or how they came into the possession of the victim-advocate. [2] It appears to us that there was a lack of a proper foundation for their admission.

However, even if we assume that a proper foundation had been laid for their admission, there are other reasons why the photographs should not have been admitted. "In order to be admissible, evidence must meet the threshold test of relevancy, that is, it must have a 'rational tendency to prove an issue in the case.'" *Commonwealth* v. *LaSota*, 29 Mass. App. Ct. 15, 24 (1990), quoting from *Commonwealth* v.

---

[2]The prosecutor's statement at the lobby conference that the photographs were found in the defendant's belongings was not placed in evidence at the trial.

The prosecutor did not question Mark or the defendant about the photographs during the course of their testimony.

*Fayerweather*, 406 Mass. 78, 83 (1989). Evidence, however, "need not establish directly the proposition sought." *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 744 (1990). "In order to be considered relevant, 'the evidence must have rendered the desired inference more probable than it would have been without it.' " *Commonwealth* v. *Fayerweather, supra* at 83, quoting from *Commonwealth* v. *Copeland*, 375 Mass. 438, 443 (1978). *Commonwealth* v. *LaSota, supra* at 24.

The Commonwealth claims that Mark's photograph showing him fondling himself was relevant to determine his sexual awareness. We agree that evidence demonstrating a child's inappropriate sexual knowledge may be relevant in a sexual abuse case. There was, however, a plethora of evidence on the issue of Mark's sexual knowledge, and the photograph's relevance to this issue is marginal at best.[3]

In regard to the admission of the defendant's photograph, the Commonwealth argues that it was relevant because it would tend to show the defendant's ability to achieve an erection. The defendant denied that he ever committed the crimes. He did not claim that he was impotent or suffered from some sexual dysfunction whereby he could not commit the acts for which he was charged. The defendant's photograph was not, directly or inferentially, relevant to any issue in the case. The Commonwealth's argument is totally without merit.

Finally, "[e]ven where evidence is relevant, there must be a determination whether its probative value is outweighed by the unfairly prejudicial effect it might have on the [fact finder]." *Commonwealth* v. *LaSota, supra* at 24. We have examined the photographs. In particular, the photograph of the defendant is grossly offensive and inflammatory. Obviously, the Commonwealth offered it "so as to depict the defendant 'as a lewd man and to lead the [fact finder] to believe that a man of his character would be likely to commit

---

[3] It is conceivable that, with a proper foundation, the photograph of Mark could be relevant to other issues. As no such foundation was created, however, we cannot speculate as to the circumstances that could result in the photograph's admissibility.

the crimes charged.' " *Id.* at 27, quoting from *Commonwealth* v. *Ellis*, 321 Mass. 669, 670 (1947). We hold that it was error to allow the Commonwealth to introduce the photographs in evidence.

The Commonwealth argues in its brief, however, that even if it was error to admit the photographs, it was harmless error because "[t]here was not a jury to be offended by the photographs."

We recognize that there are decisions which hold that in determining whether the introduction of inadmissible evidence was harmless error, the fact that the case was heard by a judge and not a jury is an important factor to be considered. In *Commonwealth* v. *Bonner*, 33 Mass. App. Ct. 471 (1992), we held that while certain testimony should not have been admitted, the defendant was not prejudiced because, "where the fact finder is a judge, not a jury, . . . [a] departure from usual procedure is not likely to be prejudicial." *Id.* at 476-477, quoting from *Commonwealth* v. *Holman*, 27 Mass. App. Ct. 830, 833 (1989). We agree generally with the principle but rule that it must be applied with considerable restraint.

We acknowledge that a judge, sitting without a jury, in ruling upon the admissibility of evidence, will at times hear or see matters that would be excluded from a jury's consideration. The judge's review of ultimately inadmissible evidence would not be prejudicial error where the judge stated that he or she either was not affected by the evidence or did not consider it. See *Berlandi* v. *Commonwealth*, 314 Mass. 424, 452 (1943). Where a judge has not indicated whether he or she has considered improperly admitted evidence, "[w]e can only speculate upon the effect of that evidence. [When w]e are not in a position to say that it had none . . . such doubts as we entertain can only be resolved in favor of the defendant." *Commonwealth* v. *Barrett*, 418 Mass. 788, 796 (1994), quoting from *Commonwealth* v. *Welcome*, 348 Mass. 68, 70 (1964). Here, however, the judge ruled that the photographs had "some probative value," and therefore must have considered the photographs in arriving at the guilty verdicts. This

constitutes reversible error. To hold otherwise, would create a danger that a jury-waived trial would be "reduce[d] . . . to an informal setting where the principles of law and justice are disregarded or perverted." *Hickey* v. *State*, 569 S.W.2d 64, 65 (Ark. 1978).

The evidence of the defendant's guilt was not overwhelming. It was a clash of credibility between Mark and the defendant. In the circumstances of this case, we hold that the admission of the photographs was prejudicial error and there must be a retrial.[4]

2. *The Stockhammer-Bishop issue.*[5] The defendant argues that he was deprived of certain of the department's records pertaining to Mark. Those records, he claims, would have been relevant for impeachment purposes.

The parties dispute the extent to which defense counsel was allowed access to the documents. Unfortunately, the transcript of the lobby conference where the matter was discussed was lost. Therefore, the whole issue of accessibility to the department's records should be revisited before the new trial starts.

We do not consider the other issues raised by the defendant because we do not believe they will surface at any retrial.

The judgments are reversed and the verdicts set aside.

*So ordered.*

---

[4] We are aware that the judge returned verdicts of not guilty on two of the rape indictments. The Commonwealth argues that the acquittals demonstrate that the judge was not influenced by the photographs. The record demonstrates, however, that there was no evidence whatsoever as to those rapes.

[5] *Commonwealth* v. *Stockhammer*, 409 Mass. 867, 883-884 (1991). *Commonwealth* v. *Bishop*, 416 Mass. 169, 181-183 (1993).