2011 UT App 163

STATE of Utah, Plaintiff and Appellee,

v.

Verbery ADAMS, Defendant and Appellant.

No. 20090793–CA.

Court of Appeals of Utah.

May 19, 2011.

Sherry Valdez and David P.S. Mack, Salt Lake City, for Appellant.

Mark L. Shurtleff and Christopher D. Ballard, Salt Lake City, for Appellee.

Before Judges McHUGH, THORNE, and ROTH.

## OPINION

ROTH, Judge:

¶1 Verbery Adams appeals his conviction following a bench trial for attempted murder, a first degree felony. Adams contends that the trial court erroneously admitted into evidence a fourteen-year-old conviction for murder in violation of Utah Rule of Evidence 404(b)'s notice and noncharacter purpose requirements. *See* Utah R. Evid. 404(b). We affirm.

## BACKGROUND

¶2 On October 4, 2008, Adams attended a party at an apartment complex where he and Allan Saena got into a fight. Allan, who was very intoxicated, punched Adams because Adams was talking to "one of [Allan's] girls." Others joined the brawl until approximately five men were engaged in beating Adams. Eventually, the fight broke up and Adams ran to his car, an SUV. As Adams was driving past the apartment building, Allan's cousin, Gary Saena, and Gary's fiancée, Jennifer Tafi, walked across the street. Adams hit Gary with his vehicle, clipping his left hip and causing him to roll over the hood of the car. Gary managed to land on his feet, and he and a couple others chased Adams on foot. Allan, who had witnessed Adams hit his cousin, ran in front of Adams's car and began pounding the hood in an effort to make Adams stop. Instead, Adams drove over Allan with the car.

¶3 Gary ran to Allan and lifted his head and upper body off the street. Adams circled the building and drove by the party again a "minute or two" later for the purpose, according to him, of picking up his girlfriend who had been left behind. When Gary heard Tafi screaming, however, he looked up to see Adams's car coming at him and Allan at approximately thirty to forty miles per hour. Gary then tried to "drag [Allan] out of the way so he wouldn't get hit, but th[e car] ... caught [Allan's] legs a second time," driving over them at about the knees.

¶4 A security officer for the apartment complex was driving behind Adams when he came around the building for a second time. He testified that he did not witness Adams's vehicle strike anyone nor did he see anyone lying in the road. Adams continued driving but stopped some distance past the group that had gathered around Allan. The security officer parked his car in front of Adams's and got out to speak with him. When Adams reported that he had been assaulted, the security officer instructed him to wait in his car while the security officer went back to speak with other witnesses. After the security officer departed, Adams left the scene in his vehicle. The other witnesses told the security officer that Adams had struck Allan with his car, and at that point, the security officer observed an injured male lying in the grass. Allan was treated at the hospital for injuries consistent with his being run over by a vehicle at least once and not inconsistent with being struck twice. His most severe injuries included a broken pelvis, a broken right femur, several fractures to the vertebrae, two broken ribs, a broken left collarbone, and a lung contusion. Allan was released from the hospital in a wheelchair two-and-a-half weeks later. He spent three months in the wheelchair and another two months using a walker.

¶5 Adams was charged with two counts of attempted murder: a first degree felony charge for intentionally or knowingly at-

tempting to kill Allan, *see* Utah Code Ann. § 76–4–101(1) (2008) (setting forth the elements of attempt); *id.* § 76–5–203(2)(a) (Supp. 2010) (listing elements of first degree murder as intentionally or knowingly causing the death of another); *id.* § 76–4–102(1)(c)(i) (2008) (classifying attempted murder under sections 76–4–101(1) and 76–5–203(2)(a) as a first degree felony), and a second degree felony charge for his actions against Gary, *see id.* § 76–4–101(1) (setting forth the elements of attempt); *id.* § 76–5–203(2)(b) (defining as murder the commission of "an act clearly dangerous to human life," with the intent to cause serious bodily injury, that causes the death of another); *id.* §§ 76–4–102(1)(b)–(c), 76–5–203(a) (classifying attempted murder under sections 76–4–101(1) and 76–5–203(2)(b) as a second degree felony).

¶ 6 Approximately five months before trial, the State notified defense counsel that it intended to "introduce [Adams]'s 1995 Murder conviction [for killing someone with his vehicle] in the State of Illinois ... to establish knowledge, intent, and absence of mistake or accident in the event that [Adams] testifie[d] at the trial and put[ ] his knowledge or intent at issue." On the morning of the bench trial, the State moved to admit a certified copy of Adams's conviction under rule 404(b) of the Utah Rules of Evidence. Over the defense's objection, the trial court determined that the conviction was admissible, observing that if the case were before a jury, the court "probably wouldn't allow it" but that admission "would [not] be prejudicial in terms of [the court] being the [factfinder] in this case." The court then cautioned the parties that it was concerned with "what transpired on October 4, 2008," not fourteen years earlier.

¶ 7 During trial, an investigating officer testified that in the course of an interview with Adams following the October 4 incident, Adams had mentioned an incident in Chicago in 1995 in which he had hit a person with his vehicle. Defense counsel objected to this testimony, arguing that it was "hearsay" and that "the State has other methods of introducing this." At that point, the State offered a certified copy of a statement of conviction for murder in Illinois in 1995; the court

overruled Adams's objection to the officer's testimony, stating that it had "already told [the prosecutor] that [it] w[ould] allow" the conviction in evidence. The defense raised no objection to the certified copy of the statement of conviction itself, either as to its admissibility in general or as to the fact that the State had offered it in its case-in-chief rather than, as its notice had stated, in rebuttal in the event that Adams testified and raised the issue of his intent. The court admitted the statement of conviction "to the extent it may or may not be helpful." Once the 1995 conviction was admitted, the State indicated, "[W]e're not going to talk about that Chicago incident," and did not question the officer further regarding the conviction. The only other mention of the prior conviction occurred during the State's closing argument when the prosecutor stated that, based on the circumstances of this case and his prior conviction for murder with a vehicle, a "car is just [Adams's] preferred weapon."

¶ 8 In a detailed ruling from the bench, the trial court convicted Adams of first degree attempted murder but acquitted him of the second degree attempted murder charge. The court did not mention the prior conviction in its ruling. Adams now appeals the trial court's decision to admit the fourteen-year-old conviction for murder in Illinois.

## ISSUES AND STANDARDS OF REVIEW

¶ 9 Adams contends that the trial court erred in admitting the prior conviction both because the State failed to give reasonable notice of its intent to introduce bad acts evidence and because it was presented to show propensity rather than for a noncharacter purpose. *See generally* Utah R. Evid. 404(b) (allowing prior convictions to be admitted for noncharacter purposes provided that the State give the defense notice of its intention to introduce such evidence). We review a trial court's evidentiary rulings under rule 404(b) for abuse of discretion. *See State v. Nelson–Waggoner*, 2000 UT 59, ¶ 16, 6 P.3d 1120. "We will reverse an erroneous evidentiary ruling only if, absent the error, there is a reasonable likelihood that there would have been a more favorable result for the defendant." *State v. Kohl*, 2000 UT 35, ¶ 17, 999 P.2d 7 (internal quotation marks omitted).

¶ 10 While Adams preserved his contention that the conviction should not have been admitted at all by his opposition to the State's motion in limine, Adams did not object to the timing of its introduction, either during the motion in limine or at trial.[1] Specifically, Adams did not object that the State had offered the conviction during its case-in-chief, contrary to its notice, which stated that the State would introduce prior bad acts evidence only if Adams "testifies at the trial and puts his knowledge or intent at issue." Consequently, Adams has failed to preserve the timing issue for appeal, *see State v. Low,* 2008 UT 58, ¶ 17, 192 P.3d 867 (stating that preservation requires a party to raise an issue to the trial court's attention so that the court has an opportunity to rule on it), and we will consider it under the plain error doctrine, *see id.* ¶ 19 (recognizing plain error as an exception to the preservation requirement). "To prevail under plain error review, a defendant must demonstrate that [1] an error exists; [2] the error should have been obvious to the trial court; and [3] the error is

harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome." *Id.* ¶ 20 (alterations in original) (internal quotation marks omitted).

## ANALYSIS

### I. Adams Was Not Prejudiced by the Admission of His Prior Conviction.

¶ 11 On appeal, Adams has raised serious issues about the admissibility of the fourteen-year-old prior conviction. We do not address that issue here, however, because any error in admissibility was harmless.[2] Consequently, we affirm the conviction.

### A. Judges, Sitting as Finders of Fact in Bench Trials, Are Presumed To Be Less Likely than a Jury To Be Prejudiced by Evidence of Prior Crimes.

¶ 12 This case was tried not to a jury, but to the court. Although the nature of the proceedings should not affect the charged crime strongly suggests that the purpose of the evidence was to show Adams's propensity to run over people when threatened rather than to establish that he had the specific intent to kill on a particular occasion fourteen years later. As one law professor has explained,

> The conclusion that the defendant intended to commit this particular crime is the end product of a chain of inferences. It proceeds from the given proposition that the defendant at another place and time committed a crime similar to, but unconnected with, the present crime. From the proven fact-the "prior"-we are asked to infer that on a specific day and time this defendant had the specific intent to participate in the crime charged. The conclusion and its factual basis are widely separated. The gap can be bridged only by supplying an inference that the defendant has a tendency (that is, a *propensity* ) to commit this kind of crime. It is this inference that is not permissible.

Abraham P. Ordover, *Balancing the Presumptions of Guilt and Innocence: Rules 404(b), 608(b) and 609(a),* 38 Emory L.J. 135, 158 (Winter 1989) (citing *United States v. Powell,* 587 F.2d 443, 447–49 (9th Cir.1978)). Even the prosecutor's closing argument statement in reference to the prior conviction—that a "car is just [Adams's] preferred weapon"—suggests propensity much more strongly than intent (or modus operandi, another proper noncharacter purpose). The trial judge's concern about the admissibility of this evidence was therefore well founded.

---

1. The defense did not announce that Adams would not testify until the close of the State's evidence. Therefore, we presume that at the time the rule 404(b) motion was argued, the defense was still under the assumption that the prior conviction evidence would only be offered if Adams testified and put knowledge or intent at issue, as indicated by the State's notice. When the State introduced the evidence in its case-in-chief prior to its knowing whether Adams would testify or what his testimony would be, defense counsel had an obligation to raise that issue to the trial court's attention in order to preserve it for appeal. *See State v. Low,* 2008 UT 58, ¶ 17, 192 P.3d 867 (requiring a party to "bring all claimed errors to the trial court's attention" by making "a timely and *specific* objection ... [at trial]" so that "the court [has] an opportunity to correct the errors" in order to preserve an issue for appeal (first alteration in original) (internal quotation marks omitted)).

2. We are skeptical regarding the admissibility of the prior conviction, however, for a number of reasons, including its age and its apparent goal of establishing propensity rather than intent. As Adams points out, nothing about the known details of his prior murder conviction appear to bear directly on his intent in this case. Instead, a factfinder would have to infer that because Adams had engaged in an altercation, then fled in his car, intentionally striking and killing a person in the process fourteen years ago, he must have had that same intent when he struck Allan. The necessary inferential path from the prior conviction to Adams's intent at the time of

the admissibility of evidence, we recognize a presumption that the court considers only admissible evidence and disregards any inadmissible evidence. *See State v. Burke,* 102 Utah 249, 129 P.2d 560, 562 (1942); *see also People v. Naylor,* 229 Ill.2d 584, 323 Ill.Dec. 381, 893 N.E.2d 653, 665 (2008) (presuming that courts consider prior convictions "only with respect to the purpose for which [they were] competent" (internal quotation marks omitted)). As a corollary to this general principal, judges in bench trials are presumed to be less likely than juries to be prejudiced by prior bad acts evidence, such as the prior conviction at issue in this case.

> [T]he judge in a bench trial, as in this case, acting as a trier of fact, is presumably less likely than a jury to be prejudiced by evidence of prior crimes, wrongs, or acts.... "[B]ecause it can be safely assumed that the trial court will be somewhat more discriminating in appraising both the competency and the effect properly to be given evidence, the rulings on evidence are looked upon with a greater degree of indulgence when the trial is to the court than when it is to the jury."

*State v. Featherson,* 781 P.2d 424, 431 (Utah 1989) (quoting *State v. Park,* 17 Utah 2d 90, 404 P.2d 677, 679 (1965)); *see also State v. Real Property at 633 E. 640 N.,* 942 P.2d 925, 930 (Utah 1997) (stating that the risk of unfair prejudice from wrongly admitted evidence is "primarily of concern during a jury trial"). The trial judge, in fact, seemed to have had just this presumption in mind when he alluded to the fact that he would not have admitted the prior conviction in a jury trial but that its admission "would [not] be prejudicial in terms of [the court] being the [factfinder] in this case." And with this presumption in mind, we now consider whether there is "a reasonable likelihood that [in the absence of any error in admission,] there would have been a more favorable result for the defendant." *Kohl,* 2000 UT 35, ¶ 17, 999 P.2d 7 (internal quotation marks omitted).

B. Adams Has Failed To Demonstrate that the Trial Court's Verdict Likely Would Have Been Different but for the Admission of the Prior Conviction.

¶ 13 Adams acknowledges the presumption that trial judges recognize the responsibility and have the commensurate ability to appropriately weigh and consider evidence-even evidence that should not have been admitted-as a general tenet but argues that, in this case, the presumption is unwarranted. In particular, Adams contends that the trial court's admission of the evidence "demonstrates that the prior conviction was considered in Adams'[s] guilt determination."

¶ 14 To support his contention, Adams relies on the Illinois decision in *People v. Naylor,* 229 Ill.2d 584, 323 Ill.Dec. 381, 893 N.E.2d 653 (2008), and the Massachusetts decision in *Commonwealth v. Darby,* 37 Mass.App.Ct. 650, 642 N.E.2d 303 (1994). Both cases recognize the general presumption that a trial judge, sitting as the finder of fact, considers the evidence for its proper worth. *See Naylor,* 323 Ill.Dec. 381, 893 N.E.2d at 665; *Darby,* 642 N.E.2d at 306–07. In each, however, the reviewing court determined that the presumption had been rebutted because the inadmissible evidence actually factored into the trial court's determination of the defendant's guilt. *See Naylor,* 323 Ill.Dec. 381, 893 N.E.2d at 666–67; *Darby,* 642 N.E.2d at 306. Although we agree that *Naylor* and *Darby* set forth the law appropriately, the facts of this case make those decisions less helpful to Adams's position.

¶ 15 In *Naylor,* the Illinois Supreme Court observed that "[w]here an objection has been made to the evidence and overruled, it cannot be presumed that the evidence did not enter into the court's consideration. The ruling itself indicates that the court thought the evidence proper." 323 Ill.Dec. 381, 893 N.E.2d at 666. Because the trial court admitted inadmissible evidence, the *Naylor* court reversed the defendant's conviction. *See id.,* 323 Ill.Dec. 381, 893 N.E.2d at 667. Adams argues we must take the same approach here. Although we do not disagree with the principle set forth in *Naylor,* the court's language must be understood in context. There, the government moved to admit a prior conviction for aggravated battery that occurred in December 1990 for the purpose of impeaching the defendant's credibility.

See *id.,* 323 Ill.Dec. 381, 893 N.E.2d at 658. The defense objected, citing the state's ten-year limit on admitting prior convictions for impeachment purposes. *See id.* The trial court overruled the objection and received the conviction in evidence. *See id.,* 323 Ill. Dec. 381, 893 N.E.2d at 658, 666. The Illinois Supreme Court decided that the trial court had misapplied the ten-year rule and that the conviction had therefore been wrongly admitted. *See id.,* 323 Ill.Dec. 381, 893 N.E.2d at 656, 665–67. The supreme court recognized the presumption that a trial judge, sitting without a jury, disregards evidence that is not properly admissible. *See id.,* 323 Ill.Dec. 381, 893 N.E.2d at 665 ("As a matter of law, we must presume that the trial court considered defendant's prior conviction only with respect to the purpose for which it was competent." (internal quotation marks omitted)). But the trial court's ruling that the prior conviction was admissible on the basis that it believed the conviction was obtained within ten years of the offense "indicate[d] that the court thought the evidence proper." *Id.,* 323 Ill.Dec. 381, 893 N.E.2d at 666. Thus, the supreme court had considerable doubt that the trial court disregarded the earlier conviction when judging the defendant's credibility. *See id.,* 323 Ill.Dec. 381, 893 N.E.2d at 666–67. As a result, it concluded that the defendant had successfully rebutted the presumption that the court only considers competent evidence and reversed the defendant's conviction. *See id.,* 323 Ill. Dec. 381, 893 N.E.2d at 665–67.

¶ 16 In the Massachusetts Appeals Court's decision in *Darby,* the trial court had erroneously admitted highly prejudicial and irrelevant photographs in a bench trial. *See* 642 N.E.2d at 304–05. The court of appeals reversed. *See id.* at 307. In so doing, the court recognized the standard presumption regarding the ability of trial judges to deal appropriately with inadmissible evidence, noting that "where the fact finder is a judge, not a jury, ... [a] departure from usual procedure is not likely to be prejudicial." *See id.* at 306 (omission and alteration in original) (internal quotation marks omitted). Indeed, it recognized that while a "judge, sitting without a jury, in ruling upon the admissibility of evidence, will at times hear or see matters that would be excluded from a jury's consideration," review of that inadmissible evidence is not necessarily prejudicial. *See id.* at 306. The court, however, distinguished the situation where the "judge has not indicated whether he or she has considered improperly admitted evidence":

> The judge's review of ultimately inadmissible evidence would not be prejudicial error where the judge stated that he or she either was not affected by the evidence or did not consider it. Where a judge has not indicated whether he or she has considered improperly admitted evidence, we can only speculate upon the effect of that evidence. When we are not in a position to say that it had none ... such doubts as we entertain can only be resolved in favor of the defendant.

*Id.* (omission in original) (citation and internal quotation marks omitted). The *Darby* court reversed the defendant's conviction because the evidence of the defendant's guilt was "not overwhelming" and because the trial court had determined that "the photographs had 'some probative value'" but did not indicate what weight it actually gave to the photographs in convicting the defendant. *See id.*

¶ 17 The present case is distinguishable from both *Naylor* and *Darby* because in each of those cases, the trial court admitted the evidence without reservation, while the trial court here indicated on the record that, from the beginning, it gave little weight to the prior conviction. In considering the State's request for admission of Adams's prior conviction, the trial court recognized the potentially prejudicial impact the prior conviction may have had on a jury, but it did not think "it would be prejudicial in terms of [the court] being the [factfinder] in this case." The court assured the parties, however, that its "real concern during the course of this trial is what transpired on October 4, 2008," the date of the charged offense. When it actually admitted the statement of the prior conviction a relatively short time later, the trial court stated that the conviction would be admitted "to the extent it may or may not be helpful." Such an equivocal, even dismissive, statement at the time of admission appears

to support the implication from the court's statements in ruling on the motion in limine that it considered the conviction to be of little moment. *See generally State v. Featherson,* 781 P.2d 424, 431 (Utah 1989) (presuming that trial judges afford evidence only the weight and effect it deserves); *Naylor,* 323 Ill.Dec. 381, 893 N.E.2d at 665 (same).

¶ 18 This conclusion finds significant additional support in the court's detailed ruling from the bench explaining its decision to convict Adams, where it evaluated the credibility of the witnesses, reconciled conflicting evidence, and set out the basis for its decision to convict on a single count of attempted murder. The court stated that it found Tafi's testimony that Allan had been struck twice to be very credible and that Gary's testimony corroborated Tafi's. The court also explained how it reconciled the inconsistencies between their testimonies and the security officer's, primarily by suggesting the security officer was not as close to Adams as he remembered being and that the court was unclear as to precisely when the security officer began following Adams. Finally, the court explained why it was convinced that Adams had the intent to kill Allan when he struck him a second time. It recognized that Adams "was probably angry" at being assaulted, but the court thought it was telling that Adams chose to flee rather than to cooperate with the security officer, concluding that Adams's own innocent explanation for having left the area was not credible. The court also found incredible Adams's explanation that he circled the building a second time to pick up his girlfriend, rather than just leaving the complex, and concluded that his actions were strong evidence of his criminal intent.[3] Nowhere in its detailed ruling did the trial court mention the prior conviction, and we see nothing in its statements explaining the ruling that suggests that the court allowed the prior conviction to affect its decision. To the contrary, the court's ruling focused solely on the events of the night in question, reinforcing a conclusion that, throughout the trial, the court remained focused on "what transpired on October 4, 2008," not fourteen years earlier.

¶ 19 Further, the court acquitted Adams of attempted murder on the second count for his actions against Gary. Because there was some evidence to support a conviction on this count, the fact that the court did not convict Adams on this charge lends further support to our conclusion that the prior conviction did not influence the verdict. *Cf. Commonwealth v. Darby,* 37 Mass.App.Ct. 650, 642 N.E.2d 303, 306 n. 4 (1994) (placing no weight on the fact that the court also acquitted the defendant on two counts where "there was *no* evidence *whatsoever* as to those [counts]" (emphases added)).

¶ 20 Because the record indicates that the trial court was not improperly influenced by Adams's prior conviction, we conclude that there is little likelihood of a different verdict had the evidence not been admitted and any error in its admission was therefore harmless.

**II. Adams Has Not Established that the Court Plainly Erred in Allowing the Prior Conviction To Be Admitted in the State's Case–in–Chief.**

¶ 21 Adams also contends that he was prejudiced because the prior conviction was admitted in violation of the State's rule 404(b) notice, which indicated that the State would introduce the prior conviction only if Adams testified and put intent or knowledge at issue. Because this issue was not preserved below, we review it for plain error.

¶ 22 To succeed on a claim of plain error, a defendant must show that there was an error, that it was obvious, and that it was prejudicial. *See State v. Low,* 2008 UT 58, ¶ 20, 192 P.3d 867. Because we conclude that any error that may have occurred was not harmful, we do not address whether an error occurred that should have been obvious to the trial court.

**A. Adams Has Failed to Establish Any Prejudice.**

¶ 23 Adams claims that his defense was prejudiced as a result of the State's failure to

---

**3.** In opening statements, defense counsel seemed to concede that if the court believed that Adams ran over Allan twice, there was evidence of intent.

provide notice that it intended to introduce the prior conviction in its case-in-chief. Specifically, he asserts that he was surprised by the introduction of the prior conviction as part of the State's case and that he otherwise "would have had a chance to prepare to distinguish the facts of the prior conviction from the facts of the present case." While Adams indicates that this would have included preparing testimony of other witnesses or preparing to testify on his own behalf, he does not provide any details about what that testimony would have been or how it would have impacted the trial. *Cf. State v. Arguelles*, 921 P.2d 439, 441 (Utah 1996) (observing, in the context of an ineffective assistance of counsel claim, that neither the record nor the appellate brief suggested that the defendant would have testified in the absence of the attorney's error or indicated what that testimony would show, and holding that an "invitation to speculate" about the impact of unspecified testimony "cannot substitute for proof of prejudice"). Nor does Adams identify any other material change in his trial preparation, presentation, or strategy that may have resulted. In addition, we observe that while the defense raised an objection to the State's mode of introducing the conviction, it did not express any concerns about its timing, much less request a continuance or a mistrial. *See State v. Knight*, 734 P.2d 913, 919 & n. 6 (Utah 1987) (attributing significance to the fact that the defendant requested, and was denied, both a continuance and a mistrial when the state failed to provide the defense with inculpatory statements). Moreover, we have already concluded that admission of the prior conviction was not substantively prejudicial. Under the circumstances, Adams has failed to show that he was harmed by the timing of the introduction of evidence of the prior conviction.

B. The Burden in Plain Error Review Remains with Adams.

¶ 24 Finally, Adams asserts that the error in notice is of such a nature that the burden should shift to the State to show that the error was harmless. As support for this contention, Adams relies on our supreme court's decisions in *State v. Knight*, 734 P.2d 913 (Utah 1987), a case in which the state

failed to provide the defense with inculpatory statements made by key witnesses, *see id.* at 916, and *State v. Bell*, 770 P.2d 100 (Utah 1988), a case in which the state failed to provide adequate notice of the charges, *see id.* at 102. In those cases, the supreme court shifted the burden to the prosecution because (1) the record was of little assistance in discovering the magnitude of the prejudice to the defense or in understanding how defense counsel might have prepared differently for the case if it had adequate knowledge and (2) the defense had put on credible evidence that the errors did, in fact, impair the defense. *See Bell*, 770 P.2d at 106–07; *Knight*, 734 P.2d at 920–21. The issues in those cases, however, had been preserved for appeal. Here, we are reviewing the timing of the introduction of the prior conviction for plain error. The burden of establishing plain error is on the party asserting it. *See Low*, 2008 UT 58, ¶ 20, 192 P.3d 867. Nothing that Adams has pointed to in *Knight* or *Bell* supports a change in that burden where plain error is at issue, and Adams has not otherwise persuaded us that such a change is warranted under the circumstances of this case.

CONCLUSION

¶ 25 Adams has failed to demonstrate that any error in the admission of his prior murder conviction during the prosecution's case resulted in prejudice to his defense. As a result, we affirm the conviction for first degree attempted murder.

¶ 26 WE CONCUR: CAROLYN B. McHUGH, Associate Presiding Judge and WILLIAM A. THORNE, JR., Judge.