IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| State of Utah, | ) | OPINION |
| | ) | |
| Plaintiff and Appellee, | ) | Case No. 20100827-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (November 29, 2012) |
| Jerry L. Graham, | ) | |
| | ) | 2012 UT App 332 |
| Defendant and Appellant. | ) | |

-----

Second District, Ogden Department, 081901761
The Honorable Scott M. Hadley

Attorneys:     Randall W. Richards and Jason B. Richards, Ogden, for Appellant
               Mark L. Shurtleff and Ryan D. Tenney, Salt Lake City, for Appellee

-----

Before Judges Orme, Roth, and Christiansen.

ORME, Judge:

¶1      Defendant appeals from his conviction on two counts of unlawful sexual activity with a minor.  *See* Utah Code Ann. § 76-5-401 (2008).  Defendant claims that his waiver of the right to counsel at trial was not knowing and voluntary and that both of his trial attorneys were constitutionally ineffective.  We affirm.

## BACKGROUND

¶2 Defendant was charged in August 2008 with two counts of unlawful sexual activity with a minor. Over the course of his prosecution, Defendant proved to be difficult. For example, his first court appearance was delayed because he refused to appear, and his preliminary hearing was postponed six times at his request.

¶3 At a pretrial conference held in December 2009, Defendant requested a bench trial and waived his right to a jury trial. After the court granted Defendant's request, Defendant's first counsel[1] stated that he wanted to "make a record" concerning a disagreement that he and Defendant had about which witnesses to call at trial. First counsel stated that Defendant wanted to call several witnesses, including Defendant's ex-wife, who in counsel's judgment would not provide admissible testimony, would make the minor victim "look[ ] even more vulnerable," and would "do more harm than good." Defendant then raised several concerns he had with first counsel, one of which was that first counsel illegally took money from clients in other cases. First counsel interrupted and told Defendant that he was "lying on the record." Defendant requested that the court order first counsel to subpoena his requested witnesses. The court refused the request, telling Defendant it would not "order your counsel to take a different trial strategy." Defendant then asked the court to dismiss first counsel, claiming that there was a "conflict of interest" and that counsel was "not defending [him] to his utmost." The court denied that request as well.

¶4 When Defendant's bench trial commenced two days later, Defendant informed the court that "[first counsel] is hereby removed as my attorney as of today." He asked the court to appoint him a new attorney and to subpoena his requested witnesses. First counsel responded by explaining that he did not want to call Defendant's requested witnesses "[s]ince it comes down to strategy, and strategy being mine and mine alone, I will not add to the burden, even though he thinks it's not adding to his burden, by calling a witness who will make him look worse than he already does." First counsel stated that he did not believe that he and Defendant had an actual conflict and explained, "The only conflict is he disagrees with me as [to] strategy."

---

[1]Defendant was represented by two attorneys during his trial and is now represented by a third attorney on appeal. We refer to the trial attorneys in the order that they represented Defendant, i.e., first counsel and second counsel.

¶5     The court agreed with first counsel, stating, "I can't find that there's a reason to remove [first counsel] and replace him with somebody else. . . . So I think your choices are if you want a free attorney, it will be [first counsel], or you can represent yourself." Defendant initially ignored these options and continued to request that another lawyer be appointed, all the while refusing to waive his right to counsel. The court reiterated to Defendant that he could avail himself of the assistance of first counsel or he could choose to represent himself. Defendant stated that if limited to those choices, he would represent himself. Despite that statement, however, Defendant refused to sign a waiver of counsel.

¶6     Trial began, and the prosecution gave its opening statement. Immediately after, Defendant informed the court that he was willing to waive his right to counsel and to sign a waiver to that effect. The court conducted the appropriate colloquy to ensure that the waiver was both knowing and voluntary. After the waiver, first counsel was appointed to act as standby counsel. The court explained to Defendant, "If you have questions about the law you can ask him about that. If you have questions about strategy you can ask him about that. He'll be right there for you." Defendant requested a continuance to prepare his defense. The prosecutor objected, "I just don't think that you get to waive your right to Counsel on the morning of trial, frankly after we've already started trial, and then ask for a continuance because you have a difference of opinion as to strategy." The court denied the continuance but informed Defendant that it would be willing to reconsider the motion at the close of the State's case.

¶7     The first witness called by the State was the victim. She testified that Defendant engaged her in sexual activity on numerous occasions during a three-month period in 2004. She described three of the incidents in particular, offering approximate dates, locations, and details. The State also called the police officer who initially spoke with Defendant about his involvement with the victim, a discussion initiated by Defendant after the police were called to the home of a relative of the victim because an "emotionally distraught" Defendant was pacing in the backyard, ranting about the "betrayal of his beliefs."

¶8     Defendant cross-examined both witnesses, conferring with first counsel multiple times throughout his examination.[2]  During his cross-examination of the police officer, Defendant seemingly attempted to pose a hypothetical to the officer.  The prosecutor objected multiple times on relevance grounds.  First counsel then interjected, apparently to correct Defendant about a misunderstanding of fact.  Defendant responded, "Okay. But it doesn't matter."

¶9     When Defendant later attempted to ask the officer about a conversation that the officer had with a witness in the course of his investigation, the court sustained a hearsay objection.  Defendant asked first counsel, "It's hearsay is what she said?"  First counsel responded, "It's hearsay."  Defendant and first counsel proceeded to confer off the record after Defendant asked how he could "get this information" into evidence.  Defendant then asked first counsel on the record whether he would need to call the witness directly to obtain information about what the witness had told the officer.  This exchange followed:

> [First counsel]:  If she was a good witness, one you would call—
>
> [Defendant]:  Hold on.  No, no, no, sir, I didn't ask you character.  I said she would—
>
> [First counsel]:  Well, I'm not going to answer in a half assed fashion, so don't ask me a question in a half ass—
>
> [Defendant]:  Whoa, half ass.

Defendant and first counsel continued to argue on the record.  First counsel noted Defendant's "belligerence" and "maltreatment" of him and claimed that Defendant had called him "racist."  Defendant told the court that he had accused first counsel of being "biased" but not "racist."

---

[2]Defendant and first counsel conferred at least twenty times during cross-examination of the victim.

¶10    During this argument, the court repeatedly asked Defendant to move on and continue questioning the officer. Defendant asked the court to rule on whether "biased" meant "racist" and refused to ask the officer any further questions. First counsel also urged Defendant to move on, saying, "Continue on. I don't care." When Defendant refused to proceed with his cross-examination of the officer, the court threatened to cut off the questioning. Defendant again asked the court to continue the trial. After that request was denied, Defendant asked the court to allow him to call a witness in order to prove that he had not called first counsel racist. In the ensuing discussion, first counsel referred to Defendant as a "frustrating individual" and warned him that he was "wasting colossal amounts of time" and "prejudicing [himself] in ways we can't even begin to describe." The court finally ended the discussion and called a recess.

¶11    After the recess, first counsel apologized to the court and to Defendant for his outburst. The court agreed to consider "whether there isn't a conflict at this point" entitling Defendant to new counsel. Defendant responded by again asking for a continuance. Oddly, first counsel opposed the motion. He stated, "[Defendant]'s doing everything he can to create a conflict so that you will continue this case and get him someone else who is going to tell him the same thing." Despite his objection, first counsel did acknowledge the obvious personal conflict between himself and Defendant but maintained that their issues stemmed from disagreements about strategy.

¶12    The trial judge noted that Defendant had been represented by first counsel in three recent cases assigned to that judge and informed Defendant, "As long as you were following your attorney's advice, I thought it went extremely well for you." The court went on to tell Defendant,

> I can't find any fault in what [first counsel]'s advised you
> insofar as what I've witnessed. But then when I watch your
> behavior, it seems like it's all against your best interest. It
> takes a monumental effort from a Court's standpoint to
> separate your behavior from what the facts of this case are
> because your behavior is very trying on the patience of
> everybody.

Defendant continued to insist that there was a conflict of interest. The court agreed that "there's a problem now." First counsel was excused, but the court told Defendant, "I

think it has been a good idea until just the last moment, but it—and I think he's helped you tremendously. You have relied on him. I've watched you." The trial was then adjourned.

¶13    The court held a hearing in January 2010 to appoint new counsel for Defendant. The court appointed second counsel to act only as standby counsel because of Defendant's earlier waiver of his right to counsel and, perhaps, because Defendant also contested the selection of second counsel. In April 2010, second counsel informed the court that Defendant asked him to file a motion for a mistrial. Second counsel explained, "I have not done that . . . because frankly, I could not in good faith find a basis that I would feel comfortable signing pleadings under Rule 11[.]" The court and second counsel clarified that second counsel was acting only as standby counsel for Defendant, but second counsel indicated that he believed that he was required to file any motions Defendant wished to make. The trial was postponed for several months while Defendant's competency was evaluated. Defendant was ultimately found competent, but before trial resumed he sent a pro se letter to the court seeking assistance in negotiating a plea bargain with the State. Defendant admitted to having previously done things to "buy time" when the State did not offer him a deal he found acceptable.

¶14    Trial finally resumed in September 2010. Defendant again attempted to have second counsel excused because second counsel, like first counsel, refused to assist Defendant in subpoenaing his ex-wife. Second counsel informed the court that he "could not in good conscience and good faith subpoena her." The court denied Defendant's request.

¶15    For reasons not apparent from the record, second counsel acted as Defendant's actual counsel, rather than merely as standby counsel, during the second phase of trial. Second counsel cross-examined the police officer, conducted direct examination of Defendant, and delivered closing argument. During his testimony, Defendant claimed never to have had any sexual contact with the victim. During his closing argument, second counsel argued that the minor had been coached and that there were inconsistencies in her testimony.

¶16    The court found Defendant guilty on both counts. The court prepared a written ruling in which it found that the minor victim was a credible witness while Defendant was not. The court observed that, although the victim had testified to between fifteen

and twenty sexual encounters with Defendant, she did not provide enough particularity about most of the incidents to establish sexual activity beyond the two counts filed by the State. With the assistance of new appellate counsel, Defendant now challenges his convictions.

## ISSUES AND STANDARD OF REVIEW

¶17 Defendant claims that the initial waiver of his right to counsel was invalid. "Whether [a defendant] voluntarily, knowingly, and intelligently waived his right to counsel is a mixed question of law and fact." *State v. Pedockie*, 2006 UT 28, ¶ 23, 137 P.3d 716. We review the court's factual findings for error and its legal conclusions for correctness. *See State v. Vancleave*, 2001 UT App 228, ¶ 5, 29 P.3d 680.

¶18 Defendant also claims that he was denied his right to the effective assistance of counsel through the actions of both first counsel and second counsel. "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162.

## ANALYSIS

### I. Defendant's Waiver of the Right to Counsel Was Knowing and Voluntary.

¶19 The Sixth and Fourteenth Amendments to the United States Constitution guaranty criminal defendants the right to counsel. *See Duncan v. Louisiana*, 391 U.S. 145, 149 (1968); *State v. King*, 2008 UT 54, ¶ 15, 190 P.3d 1283. In *Faretta v. California*, 422 U.S. 806 (1975), the United States Supreme Court held that the Sixth Amendment also provides defendants the right to waive their right to counsel in favor of conducting their own defense.[3] *See id.* at 836. "Because a defendant's choice of self-representation often results in detrimental consequences to the defendant, a trial court must be vigilant to assure that the choice is freely and expressly made 'with eyes open.'" *State v. Bakalov*,

---

[3]The right to self-representation in criminal proceedings is also recognized by the Utah Constitution and by statute. *See* Utah Const. art. I, § 12; Utah Code Ann. § 77-1-6(1)(a) (2008).

1999 UT 45, ¶ 15, 979 P.2d 799 (quoting *Faretta*, 422 U.S. at 835) (additional citation and internal quotation marks omitted).

¶20 While a waiver of counsel must be voluntary, it need not be "entirely unconstrained." *Id.* ¶ 17 (citation and internal quotation marks omitted). "The accused, although guaranteed the right to counsel by the Sixth Amendment, does not have the absolute right to counsel of his or her own choosing." *State v. Arguelles*, 2003 UT 1, ¶ 87, 63 P.3d 731 (citation and internal quotation marks omitted). The court may ask a defendant "in the interest of orderly procedures, to choose between waiver of counsel and another course of action as long as the choice presented to him is not constitutionally offensive." *Bakalov*, 1999 UT 45, ¶ 17 (citation, internal quotation marks, and brackets omitted). "[R]equiring a defendant to choose between competent appointed counsel and proceeding pro se does not amount to an involuntary decision," *Arguelles*, 2003 UT 1, ¶ 73, as defendants are "'not entitled to pick and choose' [their] court-appointed counsel 'by either the process of an affirmative demand or the selective elimination of other attorneys,'" *Bakalov*, 1999 UT 45, ¶ 20 (quoting *State v. Wulffenstein*, 733 P.2d 120, 121 (Utah 1986) (per curiam)).

¶21 Courts recognize three methods by which a defendant may waive his right to counsel: express waiver, forfeiture, and waiver by conduct. *See State v. Pedockie*, 2006 UT 28, ¶ 27, 137 P.3d 716. "True waiver typically occurs when a defendant affirmatively requests permission to proceed pro se." *Id.* ¶ 28. For an express waiver to be considered valid, the court must ascertain that the defendant made the decision "knowingly and intelligently, being aware of the dangers inherent in self-representation." *Id.* ¶ 29. Generally, a trial court conducts a "colloquy on the record," *id.*, to determine whether a defendant is "'aware of the dangers and disadvantages of self-representation,'" *id.* ¶ 26 (quoting *Faretta*, 422 U.S. at 835).

¶22 Although Defendant initially refused to sign a waiver, he informed the court after the prosecution's opening statement that he was willing to waive his right to counsel and sign a waiver. The court then conducted a colloquy on the record to ensure that Defendant's waiver was knowing and voluntary, and the court apprised Defendant of the potential risks of foregoing counsel. First counsel was then discharged as counsel and appointed to act as standby counsel.

¶23 There is no claim that the colloquy or waiver form were insufficient. Assuming that counsel did not have an actual "conflict of interest" and was not constitutionally

ineffective—issues we discuss in greater depth in section II of this opinion—Defendant's waiver must be regarded as valid.

## II. Defendant Fails To Demonstrate That He Was Denied the Right to the Effective Assistance of Counsel.

¶24    Defendant claims that first counsel was ineffective because an "actual conflict of interest" existed.  The thrust of this argument seems to be that his waiver of the right to counsel was invalid because having to choose between counsel with a conflict of interest and no counsel at all put him in the very situation condemned in *State v. Arguelles*, 2003 UT 1, 63 P.3d 731.  *See id.* ¶ 74 ("After all, '[a] defendant cannot be forced to proceed with incompetent counsel [because a] choice between proceeding with incompetent counsel or no counsel is in essence no choice at all.'") (quoting *State v. Bakalov*, 1999 UT 45, ¶ 20, 979 P.2d 799) (additional citation and internal quotation marks omitted).  He also contends that first counsel's performance was objectively deficient and therefore ineffective.  The State argues that there was no conflict of interest; that first counsel was not ineffective under the tests set forth in either *Strickland v. Washington*, 466 U.S. 668 (1984), or *Cuyler v. Sullivan*, 446 U.S. 335 (1980); and that there is no right to the effective assistance of standby counsel.  We do not address the State's contention regarding the right to effective assistance by standby counsel because we conclude that first counsel did not have a conflict of interest and was not ineffective.[4]

¶25    Defendant also claims that second counsel was ineffective for failing to file a motion for mistrial based on first counsel's comments during the first day of trial.  The State argues that this claim is inadequately briefed and is also without merit.  We conclude that second counsel was not ineffective.

### A. First Counsel Did Not Have a Conflict of Interest.

---

[4]We recognize the logic of the State's position.  A defendant who has waived his right to counsel would seem to have necessarily waived his right to the effective assistance of counsel, standby or otherwise.

¶26    Defendant argues that first counsel had a "conflict of interest," entitling Defendant to a presumption of prejudice. The United States Supreme Court has held that

> a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief. But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance.

*Cuyler v. Sullivan*, 446 U.S. 335, 349–50 (1980) (internal citation omitted). *Accord State v. Taylor*, 947 P.2d 681, 686 (Utah 1997) ("[W]hen an ineffectiveness claim is grounded on a conflict of interest, we presume prejudice if the defendant demonstrates 'that an actual conflict of interest adversely affected his lawyer's performance.'") (quoting *Cuyler*, 446 U.S. at 348); *State v. Johnson*, 823 P.2d 484, 488 (Utah Ct. App. 1991) ("If the defendant makes such a showing, prejudice need not be demonstrated to prevail on the claim. The court will presume the defendant was prejudiced by the lawyer's performance.") (internal citation omitted).

¶27    Defendant contends that "in the present case, the trial court found an actual conflict of interest, triggering this presumption of prejudice." Defendant is referring to the court's statement to first counsel, "I do think that there's a problem now between [first counsel] and [Defendant]. I mean, I've witnessed it here in the courtroom. I think that would be very difficult to be a client under those circumstances." It is an unwarranted extrapolation, however, to assume that the "problem" between Defendant and first counsel was the type of conflict of interest at issue in *Cuyler*. *Cuyler* addressed a situation in which the defendant's lawyer was concurrently representing another co-defendant who had competing interests. *See* 446 U.S. at 337–38. The "conflict of interest" contemplated by *Cuyler* and its progeny refers to "a division of loyalties" in which counsel "struggle[s] to serve two masters." *See Mickens v. Taylor*, 535 U.S. 162, 172 n.5 (2002) (citation and internal quotation marks omitted).

¶28    While "'conflict' is . . . used in common parlance to describe a personality conflict, an artistic conflict, a family conflict, and many other sorts of antagonism—even war"—"legal conflict[ ] of interest" generally refers to "an incompatibility between the interests of two of a lawyer's clients, or between the lawyer's own private interest and those of the client." *Plumlee v. Masto*, 512 F.3d 1204, 1210 (9th Cir. 2008). First counsel

informed the court that "the only conflict is [Defendant] disagrees with me as [to] strategy." While Defendant and first counsel repeatedly bickered on the record and clearly experienced "conflict" in the colloquial sense, "[t]he fact that a defendant does not get along with his attorney does not, standing alone, establish a denial of the effective assistance of counsel." *Gardner v. Holden*, 888 P.2d 608, 622 (Utah 1994). Therefore, while we recognize that first counsel's interactions with Defendant during the first day of trial were often unseemly and plagued by interpersonal discord, Defendant fails to establish a legal conflict of interest, as opposed to a significant personality clash, and is consequently not entitled to a presumption of prejudice under *Cuyler*.

### B. Defendant Fails To Demonstrate That Either First Counsel or Second Counsel Was Ineffective Under *Strickland*.

¶29    The Sixth Amendment grants criminal defendants the "'right to the effective assistance of counsel.'" *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). To prevail on a claim of ineffective assistance of counsel, "the defendant must show that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Id.* at 687. "The fact that a defendant does not get along with his attorney does not, standing alone, establish a denial of the effective assistance of counsel. [A defendant] must also establish that the animosity resulted in such a deterioration of the attorney-client relationship that the right to the effective assistance of counsel was imperiled." *Gardner v. Holden*, 888 P.2d 608, 622 (Utah 1994).

> [T]he cause of the breakdown—or who is to "blame"—in an attorney-client relationship significantly affects whether the breakdown constitutionally requires the court to substitute a defendant's court-appointed counsel. . . . To successfully show "good cause" for rejecting court-appointed counsel, a defendant must meet a heavy burden. A defendant must do more than show that he or she does not have a "meaningful relationship" with his or her attorney.

*State v. Scales*, 946 P.2d 377, 382 (Utah Ct. App. 1997) (quoting *State v. Wulffenstein*, 946 P.2d 377, 382 (Utah Ct. App. 1997)). Furthermore, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (citation and internal quotation marks omitted). In sum, to prove ineffective assistance, Defendant must show "that there was no 'conceivable tactical basis for counsel's actions.'" *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162 (quoting *State v. Bryant*, 965 P.2d 539, 542 (Utah Ct. App. 1998)) (emphasis omitted).

### 1. Defendant Fails To Demonstrate That First Counsel Was Ineffective.

¶30 Defendant was a consistently obstreperous client. While there was obviously tension between Defendant and first counsel, the trial court removed first counsel when their relationship reached a breaking point. In considering Defendant's earlier request for different counsel, the court specifically stated, "I can't find that there's a reason to remove [first counsel] and replace him with somebody else." But later, the court immediately stopped the proceedings when the relationship between Defendant and first counsel became irreparably damaged.

¶31 Defendant also claims that first counsel was deficient for "continuously undermining [his] credibility." It is important to note that this was a bench trial rather than a jury trial. Utah appellate courts presume that when conducting a bench trial, the trial court "considers only admissible evidence and disregards any inadmissible evidence." *State v. Adams*, 2011 UT App 163, ¶ 12, 257 P.3d 470. "And even if . . . counsel made improper comments . . . , when the trial is to the bench we assume the trial court disregards any improper statements." *Pitt v. Taron*, 2009 UT App 113, ¶ 4, 210 P.3d 962. *See also In re Estate of Baxter*, 399 P.2d 442, 445 (Utah 1965) ("[W]hen the trial is to the court, his rulings on evidence need not be subjected to quite such critical scrutiny as when it is to the jury, because in arriving at his conclusions upon the issues he will include in his consideration of them his knowledge and his judgment as to the competency, materiality and effect of evidence.").

¶32 There is nothing in the record to indicate that the court was anything less than fair to Defendant. Indeed, while Defendant's requested relief on appeal is a retrial, there is no suggestion that the case should be assigned to a different judge in the event of remand. Appellate counsel readily conceded at oral argument that he "saw no indication of disrespect" toward Defendant from the trial court. The court removed first counsel as soon as his relationship with Defendant deteriorated to a degree that the trial court found it was adversely impacting Defendant's case. The court even told

Defendant at that time that "[a]s long as you were following your attorney's advice, I thought it went extremely well for you" and that the court "[could not] find any fault in what [first counsel]'s advised you insofar as what I witnessed. But then when I watch your behavior, it seems like it's all against your best interest."

¶33    In its written ruling, the court never once alluded to first counsel's comments. Instead, the court stated that it convicted Defendant because it found the victim's testimony to be more credible than Defendant's. Defendant has not challenged the sufficiency of the evidence on appeal, and we cannot conclude that Defendant was prejudiced by his pugnacious interactions with first counsel on the first day of trial.

### 2. Defendant Fails To Demonstrate That Second Counsel Rendered Ineffective Assistance.

¶34    Defendant claims that second counsel was ineffective for not filing a motion for mistrial based on the interactions between Defendant and first counsel on the first day of trial. This was no simple oversight on the part of second counsel. Second counsel informed the court of Defendant's request but explained, "I have not done that . . . because frankly, I could not in good faith find a basis that I would feel comfortable signing pleadings under Rule 11[.]" Thus, Defendant cannot persuade this court "that there was no conceivable tactical basis for counsel's actions," *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162 (emphasis, citation, and internal quotation marks omitted), when second counsel specifically informed the court that he had weighed the merits of Defendant's requested motion and found that there was no basis for it. *Cf. State v. Pedersen*, 2010 UT App 38, ¶ 19, 227 P.3d 1264 (determining that "[d]efense counsel was . . . not ineffective in failing to move for a mistrial" when the motion "likely would have been futile").

¶35    Defendant's argument that second counsel should have moved for a mistrial based on Defendant's own conduct in defending himself on the first day of trial similarly fails. Defendant's waiver of his right to counsel was knowing and voluntary, *see supra* ¶¶ 19–23, and "a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of effective assistance of counsel." *Faretta v. California*, 422 U.S. 806, 835 n.46 (1975) (internal quotation marks omitted). Therefore, Defendant is unable to demonstrate that second counsel was deficient for choosing not to file a motion for mistrial on the morning of the second day of trial.

CONCLUSION

¶36    Defendant's waiver of the right to counsel was knowing and voluntary.  The court removed first counsel as soon as the relationship between Defendant and first counsel became totally unproductive.  Defendant was not prejudiced by the admittedly unseemly interactions between Defendant and first counsel.  Second counsel was not ineffective for deciding against moving for a mistrial.

¶37    Affirmed.


_____
Gregory K. Orme, Judge


-----


¶38    WE CONCUR:


_____
Stephen L. Roth, Judge


_____
Michele M. Christiansen, Judge